**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| FAIRFAX COUNTY SCHOOL BOARD, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LINDA McMAHON, in her official capacity | ) | |
| as Secretary of Education of the United | ) | Civil Action No. _____ |
| States; the UNITED STATES | ) | |
| DEPARTMENT OF EDUCATION, | ) | |
| | ) | |
| *Defendants.* | | |

## COMPLAINT

Plaintiff, the Fairfax County School Board ("FCSB"),[1] through its undersigned attorneys,

brings this action under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* (the "APA"),

and the Declaratory Judgment Act, 28 U.S.C. § 2201, and alleges for its complaint as follows:[2]

## INTRODUCTION

1.     On August 19, 2025, the Department of Education (the "Department") issued a

press release announcing that it was "placing . . . [FCPS] . . . in Northern Virginia on high-risk

status" with the result that "all Department funds including formula funding, discretionary grants,

and impact aid grants" will be "done by reimbursement only."[3]

---

[1] Plaintiff Fairfax County School Board operates, maintains and supervises the Fairfax County Public Schools ("FCPS").

[2] Arlington School Board ("ASB") has filed against Defendants a similar action and motion for immediate issuance of an order for a temporary restraining order and preliminary injunction. Given the similar nature of the action and motions, ASB and FCSB request that the two actions and motions be consolidated.

[3] *See* Ex. A, Office of Comm'cns & Outreach, "U.S. Department of Education Places Five Northern Virginia School Districts on High-Risk Status and Reimbursement Payment Status for Violating Title IX," U.S. DEP'T OF EDUC. (Aug. 19, 2025), https://tinyurl.com/26kzwz3y.

2.      The Department sought to justify this decision by a bare, and incorrect, assertion that FCPS (and four other Northern Virginia school districts) have been "in violation of Title IX of the Education Amendments of 1972."[4]  Defendants assert that FCPS violates Title IX by maintaining a policy that permits students to access restrooms and locker rooms ("facilities") that align with their gender identity.

3.      Later on August 19, 2025 Defendant McMahon sent a letter to FCPS notifying it of this change in status and asserting that it encouraged the Virginia Department of Education ("VDOE") to similarly withhold federal funds passed through state funding mechanisms to FCPS. Ex. B.

4.      Defendants' action came a mere two business days after the U.S. Court of Appeals for the Fourth Circuit reaffirmed that its interpretation of Title IX in *Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020) remains the law in Northern Virginia as well as the rest of the Circuit.  In *Grimm*, the Fourth Circuit held that both the Equal Protection Clause and Title IX compel local school boards to provide students with access to facilities that correspond with their gender identity.  As Fourth Circuit panel precedent, *Grimm* binds FCPS.

5.      Defendants' placement of FCPS on "high-risk status" and conditioning its federal funding is a final agency action subject to APA review.  Defendants' action cannot withstand that review because it is arbitrary, capricious, an abuse of discretion, and otherwise contrary to law. Accordingly, this Court must hold unlawful and set aside Defendants' action.  5 U.S.C. § 706.

6.      The Court should separately declare that FCPS's policy does not violate Title IX because *Grimm* is controlling law in the Fourth Circuit.

---

[4] *Id.*

## JURISDICTION AND VENUE

7.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the APA, 5 U.S.C. §§ 701–06; the Declaratory Judgment Act, 28 U.S.C. § 2201; and Title IX.

8.    Venue is proper in this district under 28 U.S.C. §§ 1391(b)(2) and (e)(1). Defendants Department of Education and Secretary McMahon are a United States agency and an officer of the United States sued in her official capacity.  FCSB is a public body operating in the Eastern District of Virginia.  FCPS is a local government agency operating in the Eastern District of Virginia.  A substantial part of the events or omissions giving rise to this Complaint occurred and continues to occur within this District.

## PARTIES

9.    Plaintiff FCSB operates, maintains, and supervises the FCPS.

10.    FCPS is a school district within the Commonwealth of Virginia.  FCPS is the independent branch of the Fairfax County government that administers public schools in Fairfax County and the independent City of Fairfax.

11.    Defendant the Department of Education ("DOE") is an executive department of the United States.  It is headquartered in Washington, D.C.

12.    Defendant Linda McMahon is the United States Secretary of Education and is sued solely in that capacity.  As Secretary of Education, Defendant McMahon is head of the DOE.

## FACTUAL ALLEGATIONS

**I.    Title IX bars discrimination on the basis of sex.**

13.    This matter involves a dispute over the scope of Title IX of the Higher Education Amendments of 1972, Pub. L. No. 92-318, which provides in pertinent part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits

of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

14.     Nothing in the text of Title IX prohibits schools from allowing transgender students from accessing school facilities that align with their gender identity.  To the contrary, several U.S. Courts of Appeals—including the Fourth Circuit—have held that Title IX *requires* schools to *allow* such access.

15.     To enforce Title IX, Congress "authorized and directed" every federal agency providing financial assistance to education programs or activities to "effectuate the provisions of [20 U.S.C. § 1681] . . . by issuing rules, regulations, or orders of general applicability." 20 U.S.C. § 1682.

16.     Congress expressly declared that any action by the department or agency "terminating or refusing to grant or to continue financial assistance" is subject to judicial review under the APA, that "any State" may obtain judicial review, and that the federal agency's action "shall not be deemed committed to unreviewable agency discretion."  20 U.S.C. § 1683.

17.     In a letter sent to FCPS on August 19, 2025, the Department has made clear that FCPS will not receive reimbursement unless it accedes to Defendants' interpretation of Title IX, which is not consistent with the interpretation that binds FCPS (and this Court).  Accordingly, the Department's order placing FCPS on "reimbursement-only" status while FCPS complies with the Fourth Circuit's binding interpretation of Title IX constitutes in fact a refusal to continue federal financial assistance within the meaning of 20 U.S.C. §§ 1682 and 1683.

## II.     The Department's regulations echo Title IX's requirements.

18.     The Department's regulations implementing Title IX are codified at 34 C.F.R. Part 106.

19.     The Department's regulations require covered entities to "provide separate toilet, locker room, and shower facilities on the basis of sex, but such facilities provided for students of one sex shall be comparable to such facilities provided for students of the other sex." 34 C.F.R. § 106.33.  They do not expressly address a student's ability to access facilities that align with their gender identity.

20.     The Department's regulations adopt and apply the procedures for enforcing Title VI of the Civil Rights Act of 1964 to its Title IX regulations.  34 C.F.R. § 106.81 (adopting and applying 34 C.F.R. §§ 100.6–100.11).

21.     These regulations require that the Department "shall to the fullest extent practicable seek the cooperation of recipients in obtaining compliance with this part and shall provide assistance and guidance to recipients to help them comply voluntarily with this part." 34 C.F.R. § 100.6(a).

22.     If noncompliance is found, and it cannot be corrected by informal means, compliance "may be effected by the suspension or termination of or refusal to grant or to continue Federal financial assistance or by any other means authorized by law."  34 C.F.R. § 100.8(a); *see also* 28 C.F.R. § 42.108.

23.     Pursuant to the Department's procedures:

> [n]o order suspending, terminating or refusing to grant or continue Federal financial assistance shall become effective until (1) the responsible Department official has advised the applicant or recipient of his failure to comply and has determined that compliance cannot be secured by voluntary means, (2) there has been an express finding on the record, after opportunity for hearing, of a failure by the applicant or recipient to comply with a requirement imposed by or pursuant to this part; and (3) the expiration of 30 days after the Secretary has filed with the committee of the House and the committee of the Senate having legislative jurisdiction over the program involved, a full written report of the circumstances and the grounds for such action.

34 C.F.R. § 100.8(c).

24.     The Department's procedures also provide:

> Any action to suspend or terminate or to refuse to grant or to continue
> Federal financial assistance shall be limited to the particular political entity,
> or part thereof, or other applicant or recipient as to whom such a finding has
> been made and shall be limited in its effect to the particular program, or part
> thereof, in which such noncompliance has been so found.

34 C.F.R. § 100.8(c).

## III.     The Fourth Circuit follows other Circuit Courts of Appeals in concluding that Title IX protects transgender individuals' access to facilities that correspond with their gender identity.

25.     Defendants' action to suspend federal funds allocated to FCPS has no legal basis, as it relies upon an incorrect interpretation of Title IX that is flatly inconsistent with binding precedent in the Fourth Circuit.

26.     In 2020, in *Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020), the United States Court of Appeals for the Fourth Circuit considered the right of transgender students to access school facilities that correspond with their gender identity.  In that case, a local Virginia school division, in response to backlash about a transgender male student's use of the boys' restroom, implemented a policy under which students could only use restrooms matching their "biological gender." *Grimm*, 972 F.3d at 593.  The policy also required that "students with gender identity issues shall be provided an alternative appropriate private facility." *Id.* at 599.  To effectuate this policy, a number of single-stall unisex restrooms were made available to all students. *Id.* at 600.

27.     The court in *Grimm* analogized the facts at issue to those involved in *Bostock v. Clayton County,* 590 U.S. 644 (2020), in which the United States Supreme Court held that discrimination against a person for being transgender is discrimination "on the basis of sex," under Title VII of the Civil Rights Act.   *Grimm*, 972 F.3d at 616–19.  Following *Bostock*, the Court of

Appeals concluded that the policy discriminated against Grimm "on the basis of sex" under Title IX, reasoning that "Grimm was treated worse than students with whom he was similarly situated because he alone could not use the restroom corresponding with his gender." *Id.* at 618. Accordingly, the court found Grimm's gender identity to be a protected status pursuant to Title IX, invalidating the school's restroom restriction. *Id.*

28. *Grimm* stands for the proposition that policies that prohibit transgender students from using the facilities that align with their gender identity constitute sex-based discrimination and violate Title IX. *Id.* The FCPS policy at issue is consistent with *Grimm* and therefore complies with, not violates, Title IX.[5]

29. Contrary to Defendants' assertions, *Grimm* remains binding law in the Fourth Circuit and has not been abrogated by *United States v. Skrmetti*, 145 S. Ct. 1816 (2025), a case upholding a Tennessee law that prohibited certain medical interventions for minors with gender

---

[5] While most courts which have considered the issue of Title IX's application to gender identity have ruled consistent with the Fourth Circuit in *Grimm*, several courts have issued contrary rulings. *Compare Parents for Priv. v. Barr*, 949 F.3d 1210, 1227 (9th Cir. 2020) (affirming dismissal of lawsuit brought by plaintiffs who alleged a school district's policy permitting students to use facilities that match their gender identity violated Title IX and holding that a transgender student's normal use of facilities alone does not constitute actional "harassment" under Title IX even if some students felt subjectively harassed); *Doe ex rel. Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 533 (3d Cir. 2018) (rejecting argument that a school district's policy allowing transgender students to use facilities that align with their gender identity violated Title IX because the policy treated all students equally irrespective of sex); *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1046–50 (7th Cir. 2017), *abrogated on other grounds as recognized by, Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020) (holding that a policy requiring students to use a bathroom that conforms with their gender identity punishes those students for their gender nonconformance and therefore violates Title IX), *with Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 816 (11th Cir. 2022) (en banc) (holding that a policy disallowing transgender students from using the bathroom that aligned with their gender identity did not violate Title IX). *See also Tennessee v. Dep't of Educ.*, 104 F.4th 577, 610–11 (6th Cir. 2024) (interpreting Title IX regulations "[w]ithout deciding any substantive merits questions").

dysphoria as constitutional under the Equal Protection Clause, or any other United States Supreme Court case.

30.    Indeed, on August 15, 2025, the Fourth Circuit reaffirmed that "*Grimm* remains the law of this Circuit and is thus binding on all the district courts within it." *Doe v. South Carolina*, No. 25-1787, 2025 WL 2375386, at *8 (4th Cir. Aug. 15, 2025).  The *Doe* case involved a challenge to a South Carolina statute that included a restriction on restroom access to students according to their gender assigned at birth—a policy identical to that struck down in *Grimm*. *Id.* at **2–3.  Doe moved for a preliminary injunction, relying on *Grimm* in support of his assertion that the South Carolina statute violated Title IX. *Id.* at *5.

31.    Applying the legal standard for a preliminary injunction, the court found that Doe had demonstrated a likelihood of success on the merits, as the South Carolina statute at issue was in direct conflict with the court's ruling in *Grimm*. *Id.* at **16–17.  The court also found that Doe had demonstrated irreparable harm, observing that "state action infringing [on] constitutional rights generally constitutes irreparable harm." *Id.* at *8.  Finally, the court found that the balance of equities supports the injunction, noting that "preventing the State from enforcing a policy that directly contradicts *Grimm*—a prior, binding decision of this [c]ourt"—was clearly in the public interest. *Id.* at *9.

32.    In his concurrence to the court's opinion in *Doe*, Chief Judge Diaz directly addressed South Carolina's argument that *Grimm* had been abrogated by prior United States Supreme Court decisions. *Id.* at **10–11.  He specifically noted that the Supreme Court's decision in *United States v. Skrmetti*, 145 S. Ct. 1816 (2025) "has little to say about the issues *Grimm* addressed," given that it involved a statute prohibiting medical care that applied to all minors rather than a sex-based restriction on facility access. *Id.* at *10.  Accordingly, Judge Diaz found that

"*Skrmetti* said nothing whatsoever to cause doubt as to the vitality of *Grimm's* Title IX holding." *Id.* at *9.

33.     Similarly instructive is the concurrence of Judge Agee, who dissented in *Grimm.* Despite his disagreement with the court's holding in *Grimm*, Judge Agee nonetheless stated that it remains binding authority in the Fourth Circuit.   "*Grimm* binds all the judges of this Circuit, notwithstanding any expectation that the Supreme Court will adjust, if not overrule, the foundations of *Grimm* in a way that is likely to determine whether Doe will ultimately prevail in this action.  The current law of this Circuit answers the question of whether Doe has satisfied the requirements for obtaining an injunction pending the appeal."  *Id.* at *14.[6]

34.     Unless and until either the *en banc* Fourth Circuit reconsiders the holding of *Grimm* or the U.S. Supreme Court decides whether transgender status is a protected class under Title IX, *Grimm* remains controlling in the Fourth Circuit.[7]

**IV.     Virginia's anti-discrimination law further requires FCPS to provide access to facilities that match individuals' gender identities.**

35.     Virginia law is consistent with *Grimm* and prohibits discrimination based on gender identity.   In 2020, the Virginia General Assembly expanded the scope of the Virginia Human Rights Act (VA. CODE ANN. § 2.2-3900–3909), by adopting the Virginia Values Act (the

---

[6] On August 28, 2025, the defendants in *Doe* filed a petition for certiorari in the United States Supreme Court.

[7] The United States Supreme Court has agreed to hear a case involving the scope of Title IX as applied to transgender student participation in school sports in its upcoming term, a case that may but has not yet provided further guidance as to the scope of Title IX.   The Court recently granted cert in *West Virginia v. B.P.J.*, a case involving a West Virginia law which limits participation in women's sports programs to students whose gender was female at birth.  *B.P.J. by Jackson v. W. Virginia State Bd. of Educ.*, 98 F.4th 542, 550 (4th Cir.), *cert. granted sub nom. W. Virginia v. B. P. J.*, No. 24-43, 2025 WL 1829164 (July 3, 2025).  The question for the Court in *B.P.J.* is whether Title IX and the Equal Protection Clause prevent a state from designating school sports teams based on biological sex.  The Court's decision may provide clarity as to whether or not Title IX requires educational institutions to separate student resources by biological sex, without concern for transgender students.

"Values Act").[8]  The law "[s]afeguard[s] all individuals within the Commonwealth from unlawful discrimination because of … gender identity … in places of public accommodation, including educational institutions."  VA. CODE ANN. § 2.2-3900.  The Values Act defines "gender identity" as "the gender-related identity, appearance, or other gender-related characteristics of an individual, with or without regard to the individual's designated sex at birth."  VA. CODE ANN. § 2.2-3901.

36.    Virginia law also states that "[a] county may enact an ordinance prohibiting discrimination in . . . education on the basis of . . . gender identity."  VA. CODE ANN. § 15.2-853.

37.    In 2021, VDOE issued Model Policies for the Treatment of Transgender Students in Virginia Public Schools, which provided that "[s]tudents should be allowed to use the facility that corresponds to their gender identity" and advised that schools should provide all students access to single-user restrooms and private changing areas for those who would like more privacy.[9]

38.    Upon the accession of Glenn Youngkin to the office of Governor of Virginia in 2022, the VDOE issued new guidance on the issue of transgender student access to school facilities.  Despite the fact that there has been no change to the Virginia Code, VDOE issued the 2023 Model Policies to Ensure Privacy, Dignity, and Respect for All Students and Parents in Virginia's Public Schools, which state that a student "shall use bathrooms that correspond with his or her sex, except to the extent that federal law otherwise requires.  *See Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020)."

---

[8] S.B. 868, 161st Gen. Assemb. Reg. Sess. (Va. 2020).

[9] *Model Policies for the Treatment of Transgender Students in Virginia's Public Schools*, VIRGINIA DEPARTMENT OF EDUCATION (Mar. 2021), https://equalityvirginia.org/wp-content/uploads/2021/03/Transgender-Student-Model-Policies-March-2021-final.pdf.

V.      **FCPS's Regulation 2603.2 adheres to federal and state statutes and regulations.**

39.    Pursuant to VDOE's Model Policies, FCPS Regulation 2603.2 "Gender-expansive and Transgender Students" went into effect in October 2020.  Ex. C.  FCPS drafted this regulation in response to the Virginia Values Act, which prevents discrimination based on gender identity.

40.    Section IX of Regulation 2603.2 provides as follows:

a)      "Gender-expansive and transgender students shall be provided with the option of using a locker room or restroom consistent with the student's gender identity."

b)      "When an instructional or extra-curricular event requires students to be accommodated overnight, students may be assigned to a room consistent with the student's gender identity."

c)      "Any student who has a need or desire for increased privacy, regardless of the underlying reason including gender identity, shall be provided with a reasonable, non-stigmatizing alternative such as the use of a private area (e.g., a nearby restroom stall with a door, an area separated by a curtain, or a nearby health or single-use/unisex bathroom), or with a separate changing schedule (e.g., using the locker room that corresponds to the student's gender identity before or after other students).  Such alternative options will minimize impact to instructional time to the extent possible."

d)      "Any alternative arrangement should be provided in a way that protects the ability of students to keep their gender-expansive or transgender status or other underlying reason for the request confidential.  FCPS will maintain confidentiality of nonpublic information about students, releasing this information to third parties only when authorized by a student or parent."

e)  "In no case shall a gender-expansive or transgender student be required to use a locker room or restroom that conflicts with the student's gender identity or be limited to using only a private area, single-occupancy accommodation, or other single-use facility as described in this section."

f)  "Gender-expansive and transgender students may also be provided with the option of using the facilities that correspond to the student's sex assigned at birth."[10]  Ex. C.

## VI.   The Office of Civil Rights of the Department of Education investigates FCPS's policies.

41.    Despite the clear authority which authorizes the FCPS policy at issue in this matter, the Office for Civil Rights ("OCR") of the United States Department of Education has launched an investigation which seeks to compel FCPS to change its policy in a manner contrary to law.  On February 12, 2025, OCR issued a Notification Letter to FCPS indicating that a complaint had been filed alleging that FCPS's policy regarding use of sex-segregated facilities such as restrooms and locker rooms (Regulation 2603.2) violated Title IX by providing greater rights to students who are transgender than to those who are cisgender.  Ex. D.  On February 24, 2025, OCR sent FCPS a Data Request Letter requesting a number of documents and responses.  Ex. E.

42.    The complaint was generated by America First Legal ("AFL"), a conservative nonprofit organization founded by White House Deputy Chief of Staff Stephen Miller.

43.    FCPS promptly responded on March 24, 2025 with documents and a narrative response defending the policy.  FCPS cited state law and the Fourth Circuit's *Grimm* opinion as

---

[10] *See* FCPS Regulation 2603.2, FAIRFAX_OCR_1307_0000049.  All FCPS policies, bylaws, and
regulations are publicly available at https://insys.fcps.edu/schoolboardapps/report_policy/cache/alpha-A.htm.

the bases for its protection of transgender students' access to facilities aligned with their gender identity. Ex. F.

44.    On July 25, 2025, OCR concluded its investigation by issuing a Findings Letter. Ex. G. In that letter, OCR asserted that the FCPS's policies and similar facilities-access policies of four other school divisions in Northern Virginia—those for Arlington, Loudoun, Prince William, and Alexandria Counties—violate Title IX and its implementing regulations. *Id.* Accompanying the Findings Letter, OCR delivered a draft Resolution Agreement which requires that each division (1) modify its policy to ensure that access to restroom and locker room facilities will be limited by students' sex assigned at birth; and (2) ensure that all policies adopt OCR's definition of the terms "sex, female, male, girls, women, boys [and] men." OCR's definitions of these terms treat individuals exclusively according to the sex assigned them at birth. Ex. H.

45.    On July 29, 2025, counsel to all five of the impacted school divisions submitted a joint request to OCR for 90 days to respond to the July 25, 2025 Findings Letter, consistent with the timeframe for negotiated resolutions provided in the OCR Case Processing Manual. Ex. I.

46.    On July 31, 2025, OCR's Regional Director Bradley Burke rejected the July 29th request for extension and instead imposed a deadline of August 15, 2025, for FCPS and the other impacted school divisions to notify OCR as to "whether or not [each Division] is willing to consider agreeing to the terms in the draft resolution agreement." Ex. J.

47.    On August 15, 2025, FCPS submitted a response letter to OCR, stating that FCPS was bound by Fourth Circuit precedent and could not modify its policies or agree to the terms of the Resolution Agreement without exposing itself to a risk of litigation for violating federal and state law. Ex. K. FCPS proposed that OCR refrain from referring the matter to the DOJ until the Supreme Court has issued its decision in *West Virginia v. B. P. J.*, No. 24-43, 2025 WL 1829164

(certiorari granted July 3, 2025), which raises a related but distinct issue of Title IX transgender sex discrimination in athletic teams.  *Id.*

48.    On August 18, 2025, FCPS submitted a supplemental response letter to OCR, providing additional authority for FCPS's position that it is bound by Fourth Circuit precedent— the opinion issued on Friday, August 15 by the United States Court of Appeals in *John Doe v. State of South Carolina*, which makes clear that *Grimm* remains good law and controls the issue of student restroom access in the Fourth Circuit.  Ex. L.

## VII.    Defendants designate FCPS as a "high-risk" entity and place FCPS in "reimbursement only" status.

49.    On August 19, 2025, the Department "designated [FCPS] as a 'high-risk' entity, under all the programs administered by the Department for which [FCPS] receives funds" due to FCPS's purported "noncompliance with Title IX."  Ex. B at 1.

50.    The Department also stated that it has designated FCPS as a "high-risk" entity in accordance with 2 C.F.R. §§ 200.208 and 3474.1.  Ex. B at 2–3.  The factors set forth in § 200.208 that the Department is required to consider include (1) "[r]eview of OMB-designated repositories of government-wide data [] or review of its risk assessment;" (2) FCPS's "history of compliance with the terms and conditions of Federal awards;" (3) FCPS's "ability to meet expected performance goals as described in § 200.211;" or (4) "a determination of whether [FCPS] has inadequate financial capability to perform the Federal award."  2 C.F.R. § 200.208.  The Department stated that it considered "the possible magnitude of the potential gross mismanagement of public funds while violating applicable laws," "the improper organizational management and operations that led to the problems discussed above," and "concerns regarding your division's lack of proper controls."  Ex. B at 2–3.

51.    The Department stated that it was "placing specific conditions on [FCPS's] use of funds in all grants it receives from the Department." *Id.* at 1–2.  In particular, "[d]ue to the sizable amount of Federal grant funds that are provided to [FCPS], and concerns discussed in this letter, the Department will place all of [FCPS's] grants on reimbursement payment status." *Id.* at 2. "Under this specific condition, [FCPS] will, when it submits a request to drawdown [*sic*] funds for a particular obligation it intends to charge to a Department grant, submit to the Department or the appropriate State division detailed documentation establishing that the expenditure in question can be allowably charged to the grant and has already been paid for by [FCPS] with non-Federal funds." *Id.* at 3.

52.    Further, the Department demanded that "within 30 days of the date of this letter" FCPS would comply with two further "specific conditions":

a)    "[FCPS] must submit plans for compliance with all federal laws, and provide detailed information that identifies and discusses the steps [FCPS] will take to ensure that grant funds will be spent in accordance with all appliable [*sic*] laws (this could include committing to implementing the resolution agreement sent to [FCPS] on July 25, 2025, with OCR's findings)." Ex. B at 3.

b)    "[FCPS] must submit a corrective action plan (as noted above, this could include committing to implement the OCR resolution agreement) that shows all steps taken to be in compliance with the applicable laws and assurances, that compliance will be properly maintained, that includes a proposed schedule to monitor the implementation of the corrective actions, and, if appropriate, a schedule of when the corrective actions will be completed and by whom (the

responsible division representative).  If deemed necessary, the Department may require additional actions to be included in the plan." *Id.* at 3.

53.     The Department's August 19, 2025 letter makes clear that FCPS will not receive reimbursement unless it accedes to the Department's interpretation of Title IX, which is not consistent with the interpretation that binds FCPS (and this Court).  Accordingly, Defendants' order placing FCPS on "reimbursement-only" status while FCPS complies with the Fourth Circuit's binding interpretation of Title IX constitutes a refusal to continue federal financial assistance within the meaning of Title IX and the Department's regulations implementing it.

54.     Defendants' challenged actions are agency actions within the meaning of the APA because they constitute the entireties or parts of agency orders or sanctions, or the equivalent thereof.  *See* 5 U.S.C. § 551(13).

55.     Defendants' challenged actions are final agency actions because they represent the culmination of Defendants' decision-making process on specific conditions imposed on FCPS due to FCPS's legally mandated facilities-access policies.  Further, Defendants' action has immediate legal and real-world effects—namely, they purport to have adjudicated FCPS to be in violation of Title IX and they have altered the conditions under which FCPS may receive funding to which it is otherwise entitled.  Indeed, because FCPS cannot—consistent with the law that binds it—alter those facilities-access policies without risking litigation, and because Defendants have conditioned reimbursement on FCPS altering those policies, Defendants have in fact refused to continue providing federal funds to FCPS.

## VIII.   FCPS has suffered irreparable harm and the balance of equities weighs in its favor.

56.     Defendants' action constitutes irreparable harm to FCPS.  Because Defendants have conditioned FCPS's receipt of federal funds on requirements FCPS cannot lawfully satisfy, FCPS has in fact lost access to those funds.

57.    For fiscal year 2026, FCPS anticipates that roughly $167 million of its budget will comes from the federal government.

58.    The largest portion—$61 million—funds food and nutrition services, which pays the salaries of FCPS's food services staff, allows FCPS to provide low-income students with free and reduced price meals, and ensures that FCPS's cafeterias are operating efficiently so that FCPS can feed its students high-quality meals.  FCPS receives another $41 million to ensure that FCPS can provide services to its students with disabilities, as required by the Individuals with Disabilities Education Act (IDEA).  The remaining $65 million is used to support students experiencing homelessness, boost the academic performance of low-income students and English learners, increase student achievement, improve the quality, quantity, and effectiveness of FCPS's teachers, principals, and other leaders, and provide career, technical education, and adult and community education programs.

59.    While FCPS's injury is primarily economic, money damages are unavailable as against the Federal Government due to federal sovereign immunity.  *See Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019) ("economic damages may constitute irreparable harm where no remedy is available at the conclusion of litigation"); *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 430 (4th Cir. 2019) ("The APA waives the federal government's sovereign immunity for a limited set of suits, brought by 'a person suffering legal wrong because of agency action' to obtain relief 'other than money damages.'") (quoting 5 U.S.C. § 702).

60.    The Department and Defendant McMahon, as appendages of the federal Executive Branch, are bound by the President's duty to "take Care that the Laws be faithfully executed." U.S. CONST. art II, § 3.  Accordingly, none of the Defendants can have any protectable interest in

enforcing the Department's unlawful order, which is based on the Department's express refusal to follow precedent that binds FCPS, this Court, and Defendants.

61.    FCPS has an interest in providing its students with "an educational program of high quality" in accordance with its duties under the Virginia Constitution.  *See* VA. CONST. art. VIII, § 1.

62.    FCPS further has an interest in ensuring that its students are afforded all constitutional and legal protections they are due, including those established by binding interpretations of federal anti-discrimination statutes such as Title IX.

63.    FCPS also has an interest in ensuring that its own actions comply with all legal requirements.

64.    Accordingly, the balance of equities and the public interest weigh in favor of injunctive relief.

## CAUSES OF ACTION

### Count I − under the Administrative Procedure Act
### (against Defendants McMahon and the Department)

65.    FCSB repeats and realleges paragraphs 1–64 as though fully set forth herein.

66.    Defendants Secretary McMahon and the Department's constructive termination of or refusal to continue federal funds owed to FCPS based on Defendants' assertion that FCPS violated Title IX constitutes a final agency action reviewable under the APA.  20 U.S.C. § 1683.

67.    The APA requires that the Court "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

68.    Defendants' action designating FCPS as a "high-risk" entity is not based on any identifiable factor or factors set forth in 2 C.F.R. § 200.208.  Though Defendants claim to have

considered FCPS's "potential gross mismanagement of public funds," "improper organizational management and operations," and "lack of proper controls," the Department has provided no evidence to support these findings. FCPS has never been notified of a failed audit, mismanagement of specific funds, or issues regarding its internal controls prior to receiving this designation. Accordingly, designating FCPS as "high-risk" based on the Department's purported "consideration" of the § 200.208 factors is arbitrary and capricious. 5 U.S.C. § 706(2)(A).

69.     Defendants' action constructively terminating or refusing to continue funds owed to FCPS is not in accordance with the law set forth in *Grimm*. The refusal to continue funds was premised on FCPS's alleged violation of Title IX as a result of its implementation of Regulation 2603.2, but that regulation merely codifies the holding of *Grimm*, which interpreted Title IX with binding effect on FCPS, this Court, and Defendants.

70.     Defendants' action imposes unwarranted penalties on FCPS not because FCPS has violated any law but because FCPS is bound to follow and is following the Fourth Circuit's precedent, which is binding within FCPS's geographical area (and which, moreover, binds this Court). Defendants' action is accordingly an abuse of discretion and contrary to law. 5 U.S.C. § 706(2)(A).

71.     Defendants' action targeting FCPS (and four other Northern Virginia schools) is arbitrary and capricious because it singles out FCPS, while ignoring similarly situated districts in Virginia and across the country that have similar policies regarding student access to facilities. Defendants have not articulated a sufficient and substantiated reason to explain why FCPS is subject to this action while others are not. This disparate treatment, without a rational basis, violates the fundamental principal that agency action must be based on reasoned decision-making. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Agency discretion is not unbounded, and selective enforcement without justification renders Defendants' action arbitrary and capricious and an abuse of discretion.  5 U.S.C. § 706(2)(A); *see Kirk v. Comm'r of SSA*, 987 F.3d 314, 321 (4th Cir. 2021) ("'Where an agency applies different standards to similarly situated entities and fails to support this disparate treatment with a reasoned explanation and substantial evidence in the record, its action is arbitrary and capricious and cannot be upheld.'") (quoting *Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 777 (D.C. Cir. 2005)).

### Count II – under the Administrative Procedure Act and the Spending Clause
### (against Defendants McMahon and the Department)

72.    FCSB repeats and realleges paragraphs 1–71 as though fully set forth herein.

73.    Separately, the Court must "hold unlawful and set aside agency action, findings, and conclusions found to be … contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

74.    The federal government may not compel states to enact or administer federal regulatory programs.  *New York v. United States*, 505 U.S. 144, 188 (1992).

75.    Congress's power to legislate is constrained by Article I, and its power to spend the public fisc does not carry with it authority to commandeer the separate sovereign states' legislative or administrative apparatus for federal purposes.  *Printz v. United States*, 521 U.S. 898, 933 (1997).

76.    The executive's power with respect to the laws of the United States extends only to the power to "take care that [they] be faithfully executed."  U.S. CONST. art. II, § 3.  The executive, when executing Congress's laws, accordingly may not do by executive action what Congress is constrained not to do by the Constitution's limitations.

77.     To the contrary, exercising powers beyond those expressly granted to the executive and legislative branches would invade the powers reserved to the states and to the people. U.S. CONST. arts. I, II;  U.S. CONST. amend. X.

78.     Here, the executive seeks to pervert Congress's spending power to compel FCPS and other school divisions in Northern Virginia to enact and administer the executive's administrative program with respect to transgender individuals.

79.     Because the executive's action seeks to commandeer power reserved to the Commonwealth and its people, it is contrary to Constitutional power and must be held unlawful and set aside.  5 U.S.C. § 706(2)(B).

**Count III − under the Administrative Procedure Act, the Declaratory Judgment Act, and the Spending Clause: Lack of Notice
(against Defendants McMahon and the Department)**

80.     FCSB repeats and realleges paragraphs 1–79 as though fully set forth herein.

81.     The Court must "hold unlawful and set aside agency action, findings, and conclusions found to be … contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

82.     Defendants' action interprets Congress's grant of funding to FCPS in a manner that would violate the Spending Clause of the U.S. Constitution because FCPS did not have clear notice that any federal funding would be conditioned on (1) rescinding Regulation 2603.2 and categorically banning students from accessing facilities in accordance with their gender identity or (2) issuing public statements regarding the meaning of Title IX or the definition of sex, female, male, girls, women, boys, or men.

83.    Article I of the U.S. Constitution specifically grants Congress the power "to pay the Debts and provide for common Defence and general Welfare of the United States." U.S. CONST. art. I, § 8, cl. 1.

84.    Incident to the spending power, "Congress may attach conditions on the receipt of federal funds." *South Dakota v. Dole*, 483 U.S. 203, 206 (1987).  However, any conditions must be imposed "unambiguously" to enable "States to exercise their choice knowingly, cognizant of the consequences of their participation." *Id.* at 207 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)).  "There can, of course, be no knowing acceptance if a [recipient] is unaware of the conditions or is unable to ascertain what is expected of it." *Pennhurst*, 451 U.S. at 17.

85.    Defendants' sole authority with respect to the laws of the United States is to "take care that [they] be faithfully executed."  U.S. CONST. Art. II § 3; *see also* U.S. CONST. Amend. X (reserving to the states and the people those powers not delegated to the federal government by the Constitution).  Where Congress may not impose ambiguous or unlawful conditions, the Executive similarly may not interpret acts of Congress to impose those conditions consistent with its duty to take care that the laws be faithfully executed.

86.    FCPS accepted federal funding with the understanding that it was required to comply with Title IX and binding judicial precedent interpreting Title IX.

87.    Congress has not clearly stated, and no court has found, that Title IX prohibits FCPS from maintaining its challenged policies.  To the contrary, Regulation 2603.2 complies with and codifies governing Fourth Circuit precedent as set forth in *Grimm*, which holds that excluding transgender students from restrooms consistent with their gender identity violates Title IX and the

Equal Protection Clause. *See also* Am. Order, *Doe v. S. Carolina*, No. 25-1787, 2025 WL 2375386 (4th Cir. Aug. 15, 2025).

88.     Defendants have nonetheless conditioned FCPS's receipt of essential federal funds on its agreement to abandon its policies in exchange for Defendants' policies and adhere to a new, extratextual interpretation of Title IX that is directly contrary to prior agency interpretation and governing precedent.

89.     Therefore, conditioning the Department funding to enforce a categorical ban on student access to facilities violates this limitation on spending power, because, inter alia, FCPS did not have "clear notice" of such a condition. *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006).

90.     Because Defendants' action is contrary to Congress's constitutional power and to FCPS's constitutional power reserved under the Tenth Amendment, Defendants' action must be held unlawful and set aside. 5 U.S.C. § 706(2)(B).

91.     FCSB is separately entitled to a judicial declaration that Defendants' action is contrary to the federal government's power under the Spending Clause. 28 U.S.C. § 2201.

### Count IV - under the Administrative Procedure Act, the Declaratory Judgment Act, and the Spending Clause: Unconstitutional Coercion
### (against Defendants McMahon and the Department)

92.     FCSB repeats and realleges paragraphs 1–91 as though fully set forth herein.

93.     The Court must "hold unlawful and set aside agency action, findings, and conclusions found to be … contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

94.     Pursuant to the Spending Clause of the United States Constitution, "spending-power conditions are legitimate only if the [recipient's] acceptance of them is in fact voluntary."

*Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219, 2232 n.4 (2025) (citing *NFIB v. Sebelius*, 567 U.S. 519, 581-82 (2012)).

95.     The Spending Clause permits the federal government to "encourage[]" compliance through funding conditions, not to punish or impose sanctions absent statutory authorization. *Sebelius*, 567 U.S. at 581.  The federal government may not wield its spending power as a "gun to the head." *Id.*

96.     Defendants' sole authority with respect to the laws of the United States is to "take care that [they] be faithfully executed."  U.S. CONST. Art. II, § 3; *see also* U.S. CONST. Amend. X (reserving to the states and the people those powers not delegated to the federal government by the Constitution).  Where Congress may not impose ambiguous or unlawful conditions, the Executive similarly may not interpret acts of Congress to impose those conditions consistent with its duty to take care that the laws be faithfully executed.

97.     FCPS receives federal education funds under several federal statutes including Title I of the Elementary and Secondary Education Act of 1965 (20 U.S.C. §§ 6301 et seq.) and the Individuals With Disabilities Education Act (20 U.S.C. §§ 1400 et seq.).  These funds are critical to FCPS's ability to provide state and federally mandated, education related services to its students, particularly its most vulnerable students.  Loss of these funds is existential.

98.     Defendants' decision to designate FCPS as "high-risk," place of all federal funds on reimbursement status, and urge state entities to do the same because FCPS did not agree with Defendants' unilateral interpretation—directly at odds with binding legal precedent—that the District's policies violate Title IX.

99.     By designating FCPS as "high-risk" unless and until FCPS agrees with Defendants' interpretation of Title IX and rescinds Regulation 2603.2, Defendants are conditioning essential federal funding on FCPS's capitulation to Defendants' extralegal demands.

100.    "Appeal" of FCPS's "high-risk" status to Defendants is futile and does not afford it meaningful review, as Defendants have made clear that compliance with their demands is the only pathway for FCPS to continue to receive essential federal funding.

101.    This threat amounts to unconstitutional coercion under the Spending Clause. *Sebelius*, 567 U.S. at 581.  Placing FCPS on "high-risk" status and withholding all federal funding, including State-administered funds earmarked for the FCPS's most vulnerable students, until FCPS accepts Defendants' demands, leaves FCPS with no meaningful choice but to comply.  And this is so even when acceptance of Defendants' terms means that FCPS must surrender local control over its lawful policies, violate state law, eschew controlling judicial precedent, and expose itself to liability for violating the rights of students under that precedent.  This funding threat compels capitulation, not voluntary agreement.  *See Medina*, 145 S. Ct. at 2232 n. 4.

102.    Because Defendants' action is contrary to Congress's constitutional power and to FCPS's constitutional power reserved under the Tenth Amendment, Defendants' action must be held unlawful and set aside.  5 U.S.C. § 706(2)(B).

103.    FCPS is separately entitled to a judicial declaration that Defendants' action is contrary to the federal government's power under the Spending Clause.  28 U.S.C. § 2201.

### Count V – *Ultra Vires*
### (against Defendants McMahon and the Department)

104.    FCSB repeats and realleges paragraphs 1–103 as though fully set forth herein.

105.    An agency cannot take any action that exceeds the scope of its constitutional or statutory authority.

106.    Federal courts possess the power in equity to "grant injunctive relief . . . with respect to violations of federal law by federal officials."  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015).  The Supreme Court has repeatedly allowed equitable relief against federal officials who act "beyond th[e] limitations" imposed by federal statute. *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949).

107.    Defendants have no authority under the Constitution or any statute to demand that FCPS rescind Regulation 2603.2 based on their erroneous interpretation of Title IX in order for FCPS to receive federal funding.

108.    Pursuant to 28 U.S.C. § 2201(a), FCSB is entitled to a declaration that Defendants acted *ultra vires* by demanding that FCSB rescind its regulation in order for FCPS to receive federal funding.

### Count VI – under the Declaratory Judgment Act
### (against Defendants McMahon and the Department)

109.    FCSB repeats and realleges paragraphs 1–108 as though fully set forth herein.

110.    An actual and justiciable controversy exists between the parties with respect to the enforceability of *Grimm*.  Defendants have asserted, and continue to assert, that *Grimm* has been abrogated, and therefore, FCPS's implementation of Regulation 2603.2 is in violation of Title IX.

111.    FCSB's position—and that of the Fourth Circuit*, see Doe*, 2025 WL 2375386—is that *Grimm* remains binding law in the Fourth Circuit and FCPS is bound to follow that law.  As such, Regulation 2603.2 is not only constitutional, but compelled by federal law.

112.    Accordingly, FCSB and Defendants have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment on the disputed matters raised herein.

113.    FCSB is therefore entitled to a declaration pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure that Regulation 2603.2 does not violate Title IX.

114.    FCSB is further entitled to a judicial declaration that Defendants' action is arbitrary, capricious, an abuse of discretion, and contrary to law.

## **PRAYER FOR RELIEF**

For relief, FCSB requests that the Court:

a)    Pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2202, vacate and set aside Defendants' decision to designate FCPS as "high-risk";

b)    Pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2202, vacate and set aside Defendants' action constructively denying funds allocated to FCPS and any other further actions taken by Defendants to implement their freeze on federal funds allocated to FCPS;

c)    Pursuant to 28 U.S.C. § 2201, issue a judicial declaration that Defendants' conditioning and freezing of federal funds allocated to FCPS is an unlawful act violative of the APA;

d)    Pursuant to 28 U.S.C. § 2201, issue a judicial declaration that Defendants' conditioning and freezing of federal funds allocated to FCPS is an unlawful act violative of the Spending Clause;

e)    Pursuant to 28 U.S.C. § 2201, issue a judicial declaration that the legal principles and holdings announced in *Grimm* and reaffirmed in the Fourth Circuit's August 15, 2025 Amended Order in *Doe*, 2025 WL 2375386, remain valid and binding legal precedent;

f)    Pursuant to 28 U.S.C. § 2201, issue a judicial declaration that Regulation 2603.2 does not violate Title IX;

g)    Pursuant to 28 U.S.C. § 2201, issue a judicial declaration that federal funds are not conditioned on compliance with Defendants' demands, including prohibiting students from accessing facilities in accordance with their gender identity;

h)    Preliminarily and permanently enjoin Defendants (including any officers, employees, and agents thereof) from taking enforcement action on the ground that Regulation 2603.2 violates Title IX;

i)    Preliminarily and permanently enjoin Defendants from conditioning, terminating, freezing, or otherwise impeding access to federal funds allocated to FCPS based on FCPS's alleged violation of Title IX;

j)    Require that Defendants immediately pay to FCPS any funds that have been denied pursuant to Defendants' August 19, 2025 letter, Ex. B, and/or Defendants' belief that FCPS and/or Regulation 2603.2 violate or have violated Title IX;

k)    Award FCSB its reasonable fees, costs, and expenses, including attorneys' fees, pursuant to 28 U.S.C. § 2412; and

l)    Grant all other such relief as this Court deems appropriate, just, and proper.

Dated:  August 29, 2025           Respectfully submitted,

                        /s/     *Timothy Heaphy*

                        Timothy Heaphy
                        WILLKIE FARR & GALLAGHER LLP
                        1875 K Street Northwest
                        Washington, District of Columbia 20006-1238
                        Tel:  (202) 303-1000
                        theaphy@willkie.com
                        Virginia State Bar I.D. Number:  68912

                        Joshua Mitchell (*pro hac vice* forthcoming)
                        Fiona L. Carroll (*pro hac vice* forthcoming)
                        Lindsay Hemminger (*pro hac vice* forthcoming)

WILLKIE FARR & GALLAGHER LLP
1875 K Street Northwest
Washington, District of Columbia 20006-1238
Tel:  (202) 303-1000
jmitchell@willkie.com
fcarroll@willkie.com
lhemminger@willkie.com

Breanna Smith-Bonsu (*pro hac vice* forthcoming)
Chloe Smeltzer (*pro hac vice* forthcoming)
WILLKIE FARR & GALLAGHER LLP
300 North LaSalle Drive
Chicago, Illinois 60654-3406
Tel:  (312)728-9000
bsmith-bonsu@willkie.com
csmeltzer@willkie.com

*Attorneys for Fairfax County School Board*

**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

|  |  |  |
|---|---|---|
| FAIRFAX COUNTY SCHOOL BOARD, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LINDA McMAHON, in her official capacity | ) | |
| as Secretary of Education of the United | ) | Civil Action No. _____ |
| States; the UNITED STATES | ) | |
| DEPARTMENT OF EDUCATION, | ) | |
| | ) | |
| *Defendants.* | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of August, 2025, I electronically filed a true and correct copy of **PLAINTIFF FAIRFAX COUNTY SCHOOL BOARD'S COMPLAINT** with the Clerk of Court using the CM/ECF system.  A copy of the foregoing will be sent to the following parties:

U.S. Department of Education

Secretary Of Education Linda McMahon

Respectfully submitted,

/s/ _____*Timothy Heaphy*_____

Timothy Heaphy
WILLKIE FARR & GALLAGHER LLP
1875 K Street Northwest
Washington, District of Columbia 20006-1238
Tel:  (202) 303-1000
theaphy@willkie.com
Virginia State Bar I.D. Number:  68912
Joshua Mitchell (*pro hac vice* forthcoming)

- 30 -

Fiona L. Carroll (*pro hac vice* forthcoming)
Lindsay Hemminger (*pro hac vice* forthcoming)
WILLKIE FARR & GALLAGHER LLP
1875 K Street Northwest
Washington, District of Columbia 20006-1238
Tel:  (202) 303-1000
jmitchell@willkie.com
fcarroll@willkie.com
lhemminger@willkie.com

Breanna Smith-Bonsu (*pro hac vice* forthcoming)
Chloe Smeltzer (*pro hac vice* forthcoming)
WILLKIE FARR & GALLAGHER LLP
300 North LaSalle Drive
Chicago, Illinois 60654-3406
Tel:  (312)728-9000
bsmith-bonsu@willkie.com
csmeltzer@willkie.com

*Attorneys for Fairfax County School Board*