**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| FAIRFAX COUNTY SCHOOL BOARD, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LINDA McMAHON, in her official capacity | ) | Civil Action No. _____ |
| as Secretary of Education of the United | ) | |
| States, and the UNITED STATES | ) | |
| DEPARTMENT OF EDUCATION, | ) | |
| | ) | |
| *Defendants.* | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF FAIRFAX COUNTY SCHOOL BOARD'S
EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND
<u>PRELIMINARY INJUNCTION</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 4

      A.     Statutory Background of Title IX ........................................................... 4

      B.     Defendants' Regulations ........................................................................ 5

      C.     FCPS's Regulation 2603.2 ..................................................................... 5

      D.     FCPS Correspondence with the Defendants ......................................... 6

      E.     Defendants Designate FCPS "High Risk" and Impose Reimbursement Special Condition ................................................................................... 8

ARGUMENT ..................................................................................................................... 9

I.     FCSB Is Likely to Succeed on the Merits of Its APA, Declaratory Judgment, and Spending Clause Claims. .................................................................................... 9

      A.     FCSB's APA and *Ultra Vires* Claims (Counts I-V) Are Likely to Succeed on the Merits. ........................................................................ 10

      B.     FCSB's Declaratory Judgment Claim (Count VI) Is Likely to Succeed on the Merits. ..................................................................................... 17

II.    FCSB Will Suffer Irreparable Harm in the Absence of Injunctive Relief. ....................... 21

III.   The Balance of Hardships and Public Interest Favor Injunctive Relief............................ 22

CONCLUSION ................................................................................................................. 24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*,
  57 F.4th 791 (11th Cir. 2022) (en banc) ...............................................................4

*Arch Mineral Corp. v. Babbitt*,
  104 F.3d 660 (4th Cir. 1997) ................................................................................11

*B.P.J. ex rel. Jackson v. W. Va. State Bd. of Educ*,
  98 F.4th 542 (4th Cir. 2024) ..................................................................................5

*Bennett v. Spear*,
  520 U.S. 154 (1997)........................................................................................10, 11

*Bostock v. Clayton County*,
  590 U.S. 644 (2020).............................................................................................20

*Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*,
  403 F.3d 771 (D.C. Cir. 2005)..............................................................................14

*City of N.Y. v. U.S. Dep't of Def.*,
  913 F.3d 423 (4th Cir. 2019) .........................................................................11, 22

*College Savings Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd.*,
  527 U.S. 666 (1999).............................................................................................15

*Doe ex rel. Doe v. Boyertown Area Sch. Dist.*,
  897 F.3d 518 (3d Cir. 2018)...................................................................................4

*Doe v. Hanover Cnty. Sch. Bd.*,
  No. 3:24-cv-293, slip op. (E.D. Va. Aug. 16, 2024)............................................22

*Doe v. S. Carolina*,
  No. 25-1787, 2025 WL 2375386 (4th Cir. Aug. 15, 2025) ........................... *passim*

*Doe v. Wood Cnty. Bd. of Educ.*,
  888 F. Supp. 2d 771 (S.D. W. Va. 2012)..............................................................23

*FCC v. Prometheus Radio Project*,
  592 U.S. 414 (2021)..............................................................................................13

*Friends of Back Bay v. U.S. Army Corps of Eng'rs*,
  681 F.3d 581 (4th Cir. 2012) ..........................................................................13, 14

*Frozen Food Express v. United States*, 351 U.S. 40, 43–44 (1956) ...........................11

*Gibbons v. Gibbs*,
    99 F.4th 211 (4th Cir. 2024) ..................................................................12

*Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*,
    245 F.3d 1172 (10th Cir. 2001) ..............................................................20

*Grimm v. Gloucester Cnty. Sch. Bd.*,
    822 F.3d 709 (4th Cir. 2016) ..................................................................23

*Grimm v. Gloucester County Sch. Bd.*,
    972 F.3d 586 (4th Cir. 2020) ........................................................ *passim*

*Jennings v. Univ. of N. Carolina*,
    482 F.3d 686 (4th Cir. 2007) ..................................................................20

*Kirk v. Commissioner of Social Security Admin.*,
    987 F.3d 314 (4th Cir. 2021) ..................................................................14

*League of Women Voters of N.C. v. North Carolina*,
    769 F.3d 224 (4th Cir. 2014) ....................................................................9

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137 (1803) ...........................................................14, 23

*Maryland v. Corp. for Nat'l & Cmty. Serv.*, No. DLB-25-1363,
    2025 WL 1585051 (D. Md. June 5, 2025) ...............................................11

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ..................................................................................13

*Mountain Valley Pipeline, LLC v. 6.56 Acres*,
    915 F.3d 197 (4th Cir. 2019) ....................................................................9

*Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*,
    918 F.3d 353 (4th Cir. 2019) ..................................................................22

*Nat'l Council of Agr. Emprs. v. U.S. Dep't of Labor*,
    143 F.4th 395 (D.C. Cir. 2025) ...............................................................10

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
    567 U.S. 519 (2012) ...........................................................................15, 16

*New York v. United States*,
    505 U.S. 169 (1992) ...........................................................................15, 16

*Pappas v. Fed. Commc'n Comm.*,
    807 F.2d 1019 (D.C. Cir. 1986) ..............................................................14

*Parents for Priv. v. Barr*,
  949 F.3d 1210 (9th Cir. 2020) ................................................................4

*Pashby v. Delia*,
  709 F.3d 307 (4th Cir. 2013) ............................................................4, 9

*S. Dakota v. Dole*,
  483 U.S. 203 (1987) ...............................................................................16

*Salomon & Ludwin, LLC v. Winters*,
  No. 24-1728, 2025 WL 2314562 (4th Cir. Aug. 12, 2025) ....................9

*Tennessee v. Dep't of Educ.*,
  104 F.4th 577 (6th Cir. 2024) .................................................................4

*United States v. Skrmetti*,
  145 S. Ct. 1816 (2025) .......................................................................8, 19

*Variable Annuity Life Ins. Co. v. Coreth*,
  535 F. Supp. 3d 488 (E.D. Va. 2021) .....................................................9

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*,
  386 F.3d 581 (4th Cir. 2004) .................................................................17

*West Virginia v. B.P.J.*,
  No. 24-43 (S. Ct.).....................................................................................13

*Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
  858 F.3d 1034 (7th Cir. 2017) .................................................................4

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008).................................................................................9, 22

**Statutes**

5 U.S.C. § 551 ...............................................................................................10

5 U.S.C. § 701 .................................................................................................2

5 U.S.C. § 702 ...........................................................................................2, 22

5 U.S.C. § 703 .................................................................................................2

5 U.S.C. § 704 .................................................................................................2

5 U.S.C. § 705 ..............................................................................................1, 2

5 U.S.C. § 706 ....................................................................................... *passim*

20 U.S.C. § 1681 ................................................................................................4

20 U.S.C. § 1683 ..............................................................................................10

28 U.S.C. § 1331 ..............................................................................................18

28 U.S.C. § 2201 ..........................................................................................2, 17

**Other Authorities**

2 C.F.R. § 200.206 .............................................................................................5

2 C.F.R. § 200.208 .....................................................................................1, 5, 8

2 C.F.R. § 3474.1 ...............................................................................................5

2 C.F.R. § 3474.10 .............................................................................................1

Fed. R. Civ. P. 65 ......................................................................................1, 3, 9

Pub. L. 92-318 ...................................................................................................4

U.S. Const. Amend. X ......................................................................................16

U.S. Const. Art. I § 8 .......................................................................................16

U.S. Const. Art. II § 3 ...............................................................................15, 23

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure Rule 65 and the Administrative Procedure Act ("APA"), Plaintiff Fairfax County School Board ("FCSB")[1] moves for immediate issuance of an order temporarily restraining and preliminarily enjoining the United States Department of Education (the "Department") and Secretary of Education Linda E. McMahon (collectively, "Defendants") from (1) designating FCPS as "high-risk" pursuant to 28 C.F.R. § 200.208 and 2 C.F.R. § 3474.10; and (2) requiring that all federal funding allocated to FCPS be done by reimbursement conditioned on compliance with Defendants' demands, including prohibiting students from accessing facilities in accordance with their gender identity.[2] *See* Fed. R. Civ. P. 65; 5 U.S.C. § 705. This matter is pressing because Defendants have effectively blocked access to $167 million in federal funds that FCPS uses to provide breakfast and lunch to its students; support special education programs for students with disabilities; develop language proficiency programs; invest in its teachers' professional development; and ultimately provide a well-rounded education for its students.

On August 19, 2025, Defendants designated FCPS as "high-risk" pursuant to 2 C.F.R. § 200.208 and 2 C.F.R. § 3474.10, placing on FCPS a "specific condition" that all federal funding flowing into FCPS be done by reimbursement. Because Defendants have conditioned that reimbursement on a legally impossible requirement, Defendants have effectively terminated or refused to continue to fund FCPS's programs that provide food and nutrition services to students;

---

[1] Plaintiff Fairfax County School Board operates, maintains, and supervises Fairfax County Public Schools ("FCPS").

[2] The Arlington School Board ("ASB") has filed against Defendants a similar action and motion for immediate issuance of a temporary restraining order and preliminary injunction. Given the similar nature of the actions and motions, ASB and FCSB request that the two actions and motions be consolidated.

support programs for students with disabilities; further education for English-language learners; and improve the quality, quantity, and effectiveness of FCPS's teachers, principals, and other leaders. Defendants did so based on their bare assertion that FCPS's Regulation 2603.2 — a health and welfare policy entitled "Gender-expansive and Transgender Students" that sets forth procedures and guidelines for schools to ensure that all students, including gender-expansive and transgender students, experience a safe, supportive, and inclusive school environment — violates Title IX. Defendants' actions in designating FCPS as "high-risk" and effectively freezing federal funds are arbitrary, capricious, an abuse of discretion, and contrary to law because they flout Title IX precedent that is binding on this jurisdiction. *Grimm v. Gloucester Cnty Sch. Bd.*, 972 F.3d 586, 619–20 (4th Cir. 2020). If this funding freeze is not enjoined by this Court, FCSB will be without the necessary funding to meaningfully carry out services that meet the aforementioned student needs.

In response, FCSB has filed this action and seeks emergency relief, including a temporary restraining order and a preliminary injunction to (1) de-designate FCPS as "high-risk" and (2) remove the condition requiring that federal funding due to FCSB be paid by reimbursement that is subject to Defendants' conditions. In this lawsuit, FCSB seeks (1) review and vacatur under the APA of Defendants' final agency actions effectively freezing FCPS's funding, *see* 5 U.S.C. §§ 701–06; (2) a judicial declaration that FCPS's Regulation 2603.2 does not violate Title IX, *see* 28 U.S.C. § 2201; and (3) injunctive relief requiring Defendants to de-designate FCPS as "high-risk," removing the condition requiring that federal funding due to FCPS be paid by reimbursement that is subject to Defendants' conditions, and barring Defendants from designating FCPS as "high-risk" again.

2

FCSB is likely to prevail on the merits of its APA claim because Defendants' actions are arbitrary, capricious, an abuse of discretion, and contrary to law.  Regulation 2603.2 codifies the Fourth Circuit's interpretation of Title IX as set forth in *Grimm*.  972 F.3d at 619–20.  There, the Fourth Circuit clearly held that, under the Equal Protection Clause and Title IX, a school board could not prohibit a student who identified as male from using a high school's sex-separated male bathroom.  *Grimm*, 972 F.3d at 619–20.  Consistent with that holding, Regulation 2603.2 provides gender-expansive and transgender students with the "option of using a locker room or restroom consistent with" either the student's gender identity or the student's sex assigned at birth.  Ex. A.  Because *Grimm* remains binding precedent in the Fourth Circuit, FCSB is likely to succeed on both its APA claim and its declaratory judgment claim that it is not in violation of Title IX.  Indeed, on August 15, 2025, the Fourth Circuit expressly reaffirmed that *Grimm* remains the law in this Circuit.  *Doe v. South Carolina*, No. 25-1787, 2025 WL 2375386, at *8 (4th Cir. Aug. 15, 2025) ("*Grimm* remains the law of this Circuit and is thus binding on all the district courts within it.").

Moreover, FCPS will be irreparably harmed in the absence of injunctive relief.  Without federal funds, FCPS will be unable to provide critical services to students, including the following: $61 million for food and nutrition services; $41 million to serve students with disabilities; and $65 million to help students overcoming challenges attendant with homelessness, low incomes, learning English, and improving the quality, quantity, and effectiveness of FCPS's teachers, principals, and other leaders.  Although those damages are economic, FCPS will not be able to recover the funds through litigation against the federal government.  The balance of hardships and public interest favor injunctive relief because Defendants would not be harmed by an order to pay

funds that the law requires them to provide FCPS and that Congress appropriated for that purpose. As such, FCSB is entitled to injunctive relief.[3]

## STATEMENT OF FACTS

### A.    Statutory Background of Title IX

Under Title IX of the Higher Education Amendments of 1972, Pub. L. 92-318, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).

As several federal Courts of Appeals—including the Fourth Circuit—have held, Title IX does not prohibit transgender students from accessing facilities consistent with their gender identity even where that differs from the sex assigned them at birth.  *See Grimm*, 972 F.3d 586 at 619; *Parents for Priv. v. Barr*, 949 F.3d 1210, 1227 (9th Cir. 2020); *Doe ex rel. Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 533 (3d Cir. 2018); *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1046–50 (7th Cir. 2017), *abrogated on other grounds as recognized by, Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020).[4]

---

[3] Fed. R. Civ. P. 65(c) states:  "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  However, the Court has discretion not to require a bond.  *Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013).  The Court should exercise that discretion here.  Defendants' withholding of funds is clearly wrongful, and FCPS should not be required to put up security to receive what it is entitled to.

[4] While the majority of courts who have considered the extent of Title IX protection of gender identity have agreed with the Fourth Circuit's holding in *Grimm*, some courts have declined to find that Title IX allows transgender students to access facilities consistent with their gender identity, thus creating a circuit split on this issue.  *See Tennessee v. Dep't of Educ.*, 104 F.4th 577, 610–11 (6th Cir. 2024) (interpreting Title IX regulations "[w]ithout deciding any substantive merits questions"); *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 816 (11th Cir. 2022) (en banc) (restrooms under Title IX and Equal Protection).

The Fourth Circuit has clearly and unambiguously held that under both the Equal Protection Clause and Title IX, a school board may not bar a student from using a school's sex-separated bathroom corresponding to that student's gender identity. *Grimm*, 972 F.3d 586 at 619. And as the Fourth Circuit has recently clarified, "*Grimm* remains the law of this Circuit and is thus binding on all the district courts within it"—including this one. *Doe*, 2025 WL 2375386, at *8. *Grimm* is controlling here.[5]

### B.    Defendants' Regulations

Federal agencies, including the Department, are "required to review the responsibility and qualification records" of recipients of federal funds before making certain awards of federal funds. 2 C.F.R. § 200.206(a)(1); 2 C.F.R. § 3474.1(a). Fund recipients "must demonstrate a satisfactory record of administering programs or activities under Federal financial assistance" and if not, federal agencies may impose "specific conditions that can appropriately mitigate the risk associated with the recipient in accordance with [2 C.F.R.] § 200.208." 2 C.F.R. § 200.206(a)(2). One of the "specific conditions" that an agency may impose on a recipient of federal funds is a requirement that payments be made as "reimbursements rather than advance payments." 2 C.F.R. § 200.208(c)(1).

### C.    FCPS's Regulation 2603.2

Regulation 2603.2 establishes "procedures and guidelines for schools [within FCPS] to ensure that all students, including gender-expansive and transgender students[,] experience a safe,

---

[5] The Supreme Court has recently granted certiorari in *B.P.J. v. West Virginia State Board. of Education*, a case raising the question of whether Title IX restricts or protects access to athletic teams based on gender identity. *B.P.J. ex rel. Jackson v. W. Va. State Bd. of Educ*, 98 F.4th 542, 565 (4th Cir. 2024), *cert. granted sub nom. W. Virginia v. B.P.J.*, No. 24-43, 2025 WL 1829164, at *1 (July 3, 2025). Depending on the scope of the Supreme Court's ruling in *B.P.J.*, it is conceivable that the circuit split could be resolved when the Court hears and decides that case in the upcoming Supreme Court term.

supportive, and inclusive school environment." Ex. A at 1. Regulation 2603.2 is designed to ensure that "[a]ll students have a right to privacy in [FCPS] facilities or while participating in FCPS sponsored events." *Id*. Regulation 2603.2 was drafted to conform to the rule announced in the Fourth Circuit's *Grimm* decision, which held that both the Equal Protection Clause and Title IX barred a school board from prohibiting a student who identified as male from using a high school's sex-separated male bathroom. 972 F.3d at 619–20. Accordingly, Regulation 2603.2 provides that "[g]ender-expansive and transgender students shall be provided with the option of using a locker room or restroom consistent with the student's gender identity." Ex. A at 4. The regulation further provides that such students may also "be provided with the option of using the facilities that correspond to the student's sex assigned at birth." Ex. A at 5.

### D.    FCPS Correspondence with the Defendants

On February 12, 2025, the Office of Civil Rights ("OCR") of the Department issued a Notification Letter and Data Request Letter to FCPS asserting that a complaint had been filed alleging that FCPS's policy regarding use of sex-segregated facilities such as restrooms and locker rooms (Regulation 2603.2) violated Title IX by providing greater rights to students who are transgender than to those who are cisgender. Ex. B; Ex. C. On March 24, 2025, FCPS promptly responded with documents and a narrative response defending the policy and citing *Grimm* and state law for the protection of transgender students' access to facilities aligned with their gender identity. Ex. D.

On July 25, 2025, OCR concluded its investigation by issuing a Letter of Findings ("Findings Letter"). Ex. E. OCR asserted that the FCPS policies and similar facilities-access policies for four other school divisions in Northern Virginia (those serving Arlington, Loudoun, Prince William, and Alexandria Counties) violate Title IX and its implementing regulations. *Id.*

Accompanying the Findings Letter, OCR delivered a draft Resolution Agreement which requires that each division (1) modify its policy to ensure that access to restroom and locker room facilities will be limited by students' sex assigned at birth; and (2) ensure that all policies adopt OCR's definition of the terms "sex, female, male, girls, women, boys [and] men," essentially memorializing a rule that treats students exclusively according to the sex assigned them at birth. Ex. F.

On July 29, 2025, counsel to the five impacted school divisions submitted a joint request to OCR for 90 days to respond to the July 25, 2025 Findings Letter, consistent with the timeframe for negotiated resolutions provided in the OCR Case Processing Manual.  Ex. G.  On July 31, 2025, OCR's Regional Director Bradley Burke rejected the July 29th request, imposing an August 15, 2025 deadline for notice to OCR as to "whether or not [the Division] is willing to consider agreeing to the terms in the draft resolution agreement."  Ex. H.

On August 15, 2025, FCPS submitted a response letter to OCR, stating that FCPS was bound by Fourth Circuit precedent and could not modify its policies or agree to the terms of the Resolution Agreement without violating federal and state law.  Ex. I.  Therein, FCPS proposed that OCR pause its investigation until the Supreme Court has issued its decision in *B.P.J.*, which may provide further guidance on the interpretation of Title IX.  *Id.*

On August 18, 2025, FCPS submitted a supplemental letter to OCR regarding the Fourth Circuit's August 15, 2025 decision in *Doe v. South Carolina*, No. 25-1787, wherein the court made clear that *Grimm* remains good law and controls the issue of student restroom access in the Fourth Circuit.  *See* Ex. J; *Doe*, 2025 WL 2375386, at *8.  In its letter, FCSB explained to OCR that *Doe* "involves a challenge to a South Carolina statute that seeks to enforce a rule identical" to that

which OCR had demanded FCPS implement:  specifically, a restriction on restroom access to students according to the sex assigned them at birth.  *Id.*

In *Doe*, FCPS explained, a student challenged the South Carolina law and moved for a preliminary injunction against its enforcement.  *Id.*  The Fourth Circuit granted the plaintiff's preliminary injunction motion, finding that (1) the plaintiff was likely to succeed on the merits of his claim as the South Carolina statute was in direct conflict with the court's prior ruling in *Grimm*; (2) the student would suffer irreparable harm absent injunctive relief; and (3) the balance of equities supported an injunction.  *Id.*  In its August 18, 2025 letter, FCPS further clarified that the Fourth Circuit's *Doe* order flatly states that "*Grimm* remains the law of this Circuit and is thus binding on all the district courts within it," thereby negating OCR's prior position that *Grimm* had been abrogated by *United States v. Skrmetti*, 145 S. Ct. 1816 (2025).  *Id.* (quoting *Doe*, 2025 WL 2375386, slip. op. at *17).[6]

### E.     Defendants Designate FCPS "High Risk" and Impose Reimbursement Special Condition

On August 19, 2025, Secretary McMahon sent FCPS a letter informing the school district that the Department had designated FCPS as "a 'high-risk' entity, under all of the programs administered by the Department for which [FCPS] receives funds, in accordance with 2 C.F.R. §§ 200.208 and 3474.10[.]"  Ex. K ("High-Risk Letter") at 2.  McMahon specified that this letter followed on the July 25, 2025 Findings Letter and FCPS's August 15, 2025 response letter.  *Id.*; *see also* Ex. E; Ex. I.  McMahon claimed that in light of FCPS's August 15, 2025 letter, she and the Department found that FCPS "remains in noncompliance with Title IX[,]" and therefore, the Department designated FCPS as a "high-risk" entity and required that all of the grant

---

[6] On August 28, 2025, the Defendants in *Doe* filed a petition for certiorari with the United States Supreme Court.

and subgrants that FCPS receives from the Department would be paid by reimbursement.  Ex. K at 1.

Secretary McMahon also represented that "[r]epresentatives of the [Virginia Department of Education ("VDOE")] have already agreed" to "take similar actions to those being taken by the Department with regard to [FCPS's] funds."  *Id*. at 2.

## ARGUMENT

FCSB is entitled to a temporary restraining order and preliminary injunction under Rule 65(a) because (1) FCSB is likely to succeed on the merits of its APA, declaratory judgment, and Spending Clause claims; (2) FCSB is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of hardships tips in FCSB's favor; and (4) an injunction is in the public interest.  *Mountain Valley Pipeline, LLC v. 6.56 Acres*, 915 F.3d 197, 211 (4th Cir. 2019) (affirming grant of preliminary injunction motion); *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Variable Annuity Life Ins. Co. v. Coreth*, 535 F. Supp. 3d 488, 501 (E.D. Va. 2021) ("The standard for granting either a TRO or a preliminary injunction is the same.").

## I.  FCSB Is Likely to Succeed on the Merits of Its APA, Declaratory Judgment, and Spending Clause Claims.

FCSB's Complaint sets forth two legal bases for its claims against Defendants:  (1) that the Defendants' actions should be set aside under the APA because Defendants, in an arbitrary, capricious, and unlawful manner, designated FCPS as a high-risk entity and required that FCPS receive all grant funds from the Department on a reimbursement basis; and (2) that declaratory judgment is warranted because FCPS's Regulation 2603.2 does not violate Title IX, despite Defendants' claims to the contrary.  To meet the likelihood-of-success element, FCSB "'need not show a certainty of success'" on the merits; a demonstration of likely success is sufficient.  *League*

9

*of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) (quoting *Pashby*, 709 F.3d at 321). Moreover, showing a likelihood of success on *any* of FCSB's claims suffices to justify injunctive relief. *See Salomon & Ludwin, LLC v. Winters*, No. 24-1728, 2025 WL 2314562, at *3 n.1 (4th Cir. Aug. 12, 2025).

Because the federal funds that Defendants have effectively frozen are essential for programs that provide students with food and nutrition services and increase student achievement, immediate action is needed. For the reasons that follow, a preliminary injunction is warranted because FCSB is likely to prevail on its APA and declaratory judgment claims.

### A.    FCSB's APA and *Ultra Vires* Claims (Counts I-V) Are Likely to Succeed on the Merits.

FCSB will likely succeed on the merits of its APA claims. Defendants' actions in "terminating or refusing to . . . continue financial assistance upon a finding of failure to comply with" Title IX are subject to judicial review under the APA. 20 U.S.C. § 1683. Under the APA, this Court must "hold unlawful and set aside" any challenged final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A). Here, because Defendants' actions are arbitrary, capricious, an abuse of discretion, and contrary to law, this Court will likely hold unlawful and set aside Defendants' actions.

#### 1.    *Defendants' actions are final agency actions reviewable under the APA.*

"[A]gency action includes the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13) (internal quotations omitted). Such an action is "final" when (1) it "mark[s] the consummation of the agency's decisionmaking process" and (2) is one "by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)

(cleaned up).  Finality for the purpose of judicial review "entails a 'pragmatic' and 'flexible' inquiry that 'lacks many self-implementing, bright-line rules' and 'is hardly crisp.'"  *Nat'l Council of Agric. Emp.s v. U.S. Dep't of Labor*, 143 F.4th 395, 410 (D.C. Cir. 2025) (quoting *Rhea Lana, Inc. v. Dep't of Labor*, 824 F.3d 1023, 1027 (D.C. Cir. 2016).

Here, Defendants' August 19, 2025 letter designating FCPS as "high-risk" and requiring that FCPS receive federal funds by reimbursement satisfy all those requirements.  This letter constitutes an agency action that is "not . . . of a merely tentative or interlocutory nature" but that reflects the conclusion of the Department's decision-making process, however stunted and misguided that process may have been, concerning the imposition of specific conditions on FCPS's funding.  *See id.*  Moreover, the Department's action was one "by which rights or obligations have been determined," *Bennett*, 520 U.S. at 177–78, because it "had an immediate and practical impact," *Frozen Food Express v. United States*, 351 U.S. 40, 43–44 (1956), imposing binding obligations on FCSB to either rescind Regulation 2603.2 in violation of federal law or access federal funding it has previously been entitled to, and to undertake other onerous tasks, including development and submission of "plans for compliance with *all* federal laws" Ex. K (emphasis added) of which there are quite a large number.  As the Fourth Circuit has explained in the context of ripeness for judicial review, "impos[ing] new conditions" on actions even *absent* a "formal administrative order" are final agency actions.  *Arch Mineral Corp. v. Babbitt*, 104 F.3d 660, 667 (4th Cir. 1997).  Here, it is through a formal administrative order—the August 19th letter—that those conditions have been imposed.

Further, under the properly "pragmatic and flexible inquiry," the Department's actions have the practical effect of terminating federal funding for FCPS, because they impose on FCSB a legally impossible condition.  *See City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th

Cir. 2019); *see also Maryland v. Corp. for Nat'l & Cmty. Serv.*, No. DLB-25-1363, 2025 WL 1585051, at *14 (D. Md. June 5, 2025) (administration's closure of AmeriCorps was a final agency action because state "grantees no longer receive funding").

> **2.     *Defendants' actions should be set aside because they reflect an erroneous interpretation of Title IX.***

**a.**  FCSB will likely be successful on its APA claim (Count I) because Defendants' actions reflect a clearly erroneous interpretation of binding law.  As a result, those actions are arbitrary, capricious, an abuse of discretion, and contrary to law.  5 U.S.C. § 706(2)(A).

Defendants demand that FCPS adhere to their interpretation of Title IX and have designated FCPS a "high-risk" entity and required that FCPS receive federal funds only through reimbursement, thereby effectively cutting off FCPS's federal funding.  But FCPS, this Court, and Defendants when acting within Maryland, Virginia, West Virginia, and both Carolinas are *all* bound not by Defendants' chosen interpretation of Title IX, but by that of the Fourth Circuit.  And on this point, the Fourth Circuit has spoken clearly:  Title IX does not *forbid* policies like Regulation 2603.2; it *requires* them.  *Grimm*, 972 F.3d at 619–20.  There is no plausible argument that *Grimm* has been overruled by either an intervening *en banc* Fourth Circuit decision or intervening Supreme Court authority.  *See Gibbons v. Gibbs*, 99 F.4th 211, 213 (4th Cir. 2024) ("When a panel of this Court decides a legal issue in a published opinion, that ruling is binding on all future panels and district courts within this circuit unless it is abrogated by the Supreme Court or an en banc decision of this Court.").  Defendants' desire for a contrary interpretation of Title IX does not trump *Grimm*, which clearly controls here.  *Id.* (noting that the controlling nature of a published opinion "does not disappear just because a future litigant identifies a fact, theory, or line of argument the previous panel could have but did not consider").

Even if there had been such an argument, the Fourth Circuit recently issued an express holding that *Grimm* continues to bind this Court and all other Courts in this Circuit. In *Doe v. South Carolina*, the Fourth Circuit emphatically rejected the District of South Carolina's characterization of *Grimm* as "unsettled" precedent. *See* 2025 WL 2375386, at *3. In *Doe*, South Carolina predicted that because the Supreme Court had granted certiorari in *West Virginia v. B.P.J.*, No. 24-43 (S. Ct.), *Grimm* or its premises would be overruled in the decision in that case. *See Doe*, 2025 WL 2375386, at *9. But as the Fourth Circuit explained, "[w]e do not know what the Supreme Court will say—or not say—in any future decision in *B.P.J.*" and accordingly "have no reason to know how or in what way its holding will impact *Grimm*'s precedential value." *Id.* Accordingly, the court stated in no uncertain terms that "*Grimm* remains the law of this Circuit and is thus binding on all the district courts within it." *Id.* at *8.

**b.** As the Supreme Court has explained, "[t]he APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Where an agency fails to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made[,]" then its decision may be found to be arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotations and citations omitted). "A material misapprehension of the baseline conditions existing in advance of an agency action can lay the groundwork" for a court to find it was arbitrary and capricious. *Friends of Back Bay v. U.S. Army Corps of Eng'rs*, 681 F.3d 581, 588 (4th Cir. 2012).

Defendants' freezing of FCPS's funds was neither reasonable nor reasonably explained. Defendants' actions were unreasonable because Defendants purported to require FCPS to implement a policy that would violate binding Fourth Circuit law. *See* Ex. K; Ex. E. FCPS

13

proposed that Defendants stay any action at least until the Court decides *B.P.J.* Ex. I. But without explanation, Defendants refused the proposed stay, designated FCPS as "high-risk," and required that FCPS receive federal funds by reimbursement—an unreasonable choice that was not reasonably explained to FCPS, and thus, arbitrary and capricious. *See* Ex. K.

Moreover, Defendants' actions are not reasonable, and therefore arbitrary and capricious, because they have singled out FCPS (and four other Northern Virginia schools) based on Regulation 2603.2, despite the fact that other similarly situated school districts in Virginia and across the nation have policies similar to Regulation 2603.2. Defendants have not explained—let alone reasonably explained—why FCPS (and other select schools) are to be designated high risk and be subject to certain conditions, while other school districts are not. This disparate treatment, without a rational basis, violates the fundamental principal that agency action must be based on reasoned decision-making. *Kirk v. Comm'r of SSA*, 987 F.3d 314, 321 (4th Cir. 2021) (citing *Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 777 (D.C. Cir. 2005) ("Where an agency applies different standards to similarly situated entities and fails to support this disparate treatment with a reasoned explanation and substantial evidence in the record, its action is arbitrary and capricious and cannot be upheld.")). Agency discretion is not unbounded, and selective enforcement without justification renders Defendants' action arbitrary and capricious and an abuse of discretion. 5 U.S.C. § 706(2)(A).

Further, Defendants plainly "misapprehen[ded] [] the baseline conditions existing" in the Fourth Circuit "in advance of [their] action." *See Friends of Back Bay*, 681 F.3d at 588. Those conditions included not just the Fourth Circuit's holding in *Grimm* but its subsequent express reaffirmance that *Grimm* remains good law in the Fourth Circuit. *See Doe*, 2025 WL 2375386, at *8; *see also* Ex. J.

14

That same fundamental legal error also justifies ruling that Defendants' actions constituted an abuse of discretion. An agency abuses its discretion when its "decision is based on an improper understanding of the law." *Pappas v. FCC*, 807 F.2d 1019, 1023 (D.C. Cir. 1986) (quoting *Jaimez-Revolla v. Bell*, 598 F.2d 243, 246 (D.C. Cir. 1979)). A proper understanding of the relevant law would necessarily recognize that the Fourth Circuit's holding binds FCPS. Defendants' contrary contention cannot be considered anything but "improper." *Id.*

And, of course, Defendants' demand that FCPS obey Defendants and not the Fourth Circuit is contrary to law. "It is emphatically the province and duty of *the judicial department* to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) (emphasis added). It is, by contrast, the duty of the Executive—of which Defendants are mere organs—to "take Care that the Laws be faithfully executed." U.S. Const. Art. II § 3. What Defendants demand here is *abrogation* of the law, not its faithful execution—and their actions are thus contrary to both of those foundational principles.

Because Defendants' actions were arbitrary and capricious, an abuse of discretion, and not in accordance with law, FCSB is likely to succeed on its APA claim, as set forth in Count I of the Complaint. 5 U.S.C. § 706(2)(A).

### 3.    *Defendants' actions must also be set aside because they are contrary to Defendants' constitutional power.*

FCSB will also likely be successful on its APA and *ultra vires* claims set forth in Counts II–V. This Court must set aside agency actions that are "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). "[T]he 'Federal Government may not compel the States to enact or administer a federal regulatory program.'" *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 575 (2012) (quoting *New York v. United States*, 505 U.S. 144, 188 (1992)). Congress may, as an exercise of its authority under the Spending Clause, U.S. Const. art. I, § 8, cl. 1,

condition the receipt of federal funds on states' "taking certain actions that Congress could not require them to take," *Sebelius*, 567 U.S. at 576 (quoting *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 686 (1999)).  Nevertheless, Congress may not, consistent with that authority, "commandeer[] a State's legislative or administrative apparatus for federal purposes."  *Id.* at 577.

And of course if Congress may not *pass* laws that "commandeer[] a State's legislative or administrative apparatus," the Executive may not *execute* Congress's laws in such a fashion.  *Id.* The President's sole Constitutional authority with respect to the laws of the United States is to "take care that [they] be faithfully executed."  U.S. Const. art. II, § 3.  In short, when executing federal laws, what is *ultra vires* of Congress is similarly *ultra vires* of the President.  Instead, the States and the people retain those powers.  U.S. Const. Amend. X.

Here, the Department—a mere appendage of the Executive—is engaged in exactly the kind of "economic dragooning" the Supreme Court has forbidden, leaving FCPS and other Virginia schools "with no real option but to acquiesce" in the Department's regulatory interpretation of Title IX.  *See Sebelius*, 567 U.S. at 582.  By cutting off over $160 million in federal funding and separately threatening the Commonwealth so that it, too, cuts off funding to FCPS and other Northern Virginia school divisions, the Department seeks not to "mild[ly] encourage[]," *South Dakota v. Dole*, 483 U.S. 203, 211 (1987), but to *compel* those divisions to "administer" the Department's illegal-in-the-Fourth-Circuit regulatory program barring transgender individuals from accessing facilities that correspond with their gender identities, *see New York*, 505 U.S. at 188.

Because that attempted coercion is contrary to Virginia's and its people's reserved constitutional power under the Tenth Amendment, FCSB will likely be successful on the APA

claims set forth in Counts II–V as this Court will likely hold unlawful the Department's actions and set them aside.  5 U.S.C. § 706(2)(B).

**B.**    **FCSB's Declaratory Judgment Claim (Count VI) Is Likely to Succeed on the Merits.**

It also is likely that FCSB will succeed on the merits of its declaratory judgment claim because (1) the court may properly exercise jurisdiction over FCSB's declaratory judgment claim; and (2) FCSB can likely show that Regulation 2603.2 does not violate Title IX.

**1.**    ***The Court may properly exercise jurisdiction over FCSB's declaratory judgment claim.***

Federal courts may exercise jurisdiction over declaratory judgment claims when the following three elements are satisfied:

> (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) (internal quotations and citations omitted); 28 U.S.C. § 2201.  Each of these elements is easily satisfied here.

First, the Complaint alleges an actual controversy between the parties of sufficient immediacy and reality such that the issuance of a declaratory judgment is appropriate. *See generally* Compl.  The Complaint sets forth APA claims alongside the declaratory-judgment claim, asserting that Defendants' actions are due to be vacated under the APA by designating FCPS as "high-risk" and requiring that FCPS receive federal funds only through reimbursement, thereby effectively freezing FCPS's funds, all based on an interpretation of Title IX that is fundamentally inconsistent with the interpretation that binds FCPS and this Court.  *See generally id*.  These claims stem from an actual, immediate, and real controversy between the parties:  here, Defendants stifled

FCPS's access to federal funds because they (wrongly) claimed that FCPS's Regulation 2603.2 violates Title IX.  As a result, Defendants have hampered FCPS's ability to fund important programs that provide invaluable services to students including food and nutrition services and services to increase student achievement.

Second, this Court has an independent basis for jurisdiction over the parties.  FCSB's claims arise under the "laws . . . of the United States," 28 U.S.C. § 1331—specifically, the APA (5 U.S.C. § 706) and Title IX.  *See* Compl. ¶¶ 2, 66–115.  As such, this case presents questions of federal law and this Court, therefore, has jurisdiction.

Third, exercising jurisdiction in the instant matter would not constitute an abuse of discretion.  While district courts may decline to entertain an action despite having declaratory-judgment jurisdiction, the Fourth Circuit has determined that a court may only do so if the court has "good reason for declining to exercise [] declaratory judgment jurisdiction." *Volvo*, 386 F.3d at 594 (internal quotations and citations omitted).  The Fourth Circuit has opined that district courts sitting in its Circuit are "obliged to rule on the merits of a declaratory judgment action when declaratory relief will serve a useful purpose in clarifying and settling the legal relations in issue, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Volvo*, 386 F.3d at 594 (internal quotations and citations omitted).

A ruling on the merits of the instant dispute would clarify and settle the legal relations between Defendants and FCSB and would afford relief from the uncertainty, insecurity, and controversy underlying this proceeding.  A declaration affirming that Regulation 2603.2 does not violate Title IX would settle the legal issues underlying Defendants' erroneous and dangerous decision to attach unsatisfiable conditions to FCPS's federal funding.

### 2.    *Regulation 2603.2 does not violate Title IX.*

FCSB is likely to succeed on the merits of its Title IX claim because it can demonstrate that Regulation 2603.2 does not violate Title IX.  In *Grimm*, the Fourth Circuit held that Title IX bars a school board from prohibiting a student who identified as male from using a high school's sex-separated male bathroom.  972 F.3d at 619–20.  Regulation 2603.2 implements that holding. *See* Ex. A at 1, 4–5.

For school districts like FCPS that sit in the Fourth Circuit, *Grimm* is binding authority. Though Defendants contended that the Supreme Court's ruling in *Skrmetti* abrogated *Grimm*, the Fourth Circuit expressly rejected that contention in *Doe*, 2025 WL 2375386, at *10.

In *Skrmetti*, the Supreme Court considered whether a Tennessee law that prohibited certain medical interventions and procedures for minors with "gender dysphoria" was constitutional under the Equal Protection Clause.  *Skrmetti*, 145 S. Ct. at 1824.  The Court upheld the Tennessee law, finding that the law did not involve a classification "based on sex" or transgender status.  *Id.* at 1837.  As such, the Court applied rational-basis review to the law and found it supported by the legislature's policy goal of protecting public health.  *Id.* at 1835–37.

Notably, *Skrmetti* did ***not*** address key issues at stake here or in *Grimm*.  For one, *Skrmetti* involved medical care available to children—a much different factual context than facilities access according to gender identity.  *Id.*at 1824.  Second, the Court's consideration of the Tennessee law at issue in *Skrmetti* involved a Constitutional challenge rather than a Title IX claim.  *Id.*.  The *Skrmetti* plaintiffs did not bring Title IX claims and the facts did not involve any educational setting.  *Id.*at 1824, 1826–28.  Finally, *Skrmetti* did not address whether transgender status is a protected class.  *See generally id.*.  The Court expressly stated that the law at issue in *Skrmetti* ***did not*** classify on the basis of transgender status because it prohibited healthcare providers from

administering puberty blockers or hormones to minors for certain medical uses, regardless of the minor's sex, thereby leaving the question of whether transgender status is a protected class unanswered. *Id.* at 1829. *Skrmetti* is therefore factually and legally distinct from the policies at issue here, which involve student access to facilities.

But to the extent doubt remained about *Grimm*'s continued force following *Skrmetti*, the Court of Appeals expressly considered and just as expressly rejected the notion that *Grimm* had been overruled. *Doe*, 2025 WL 2375386, at *9. Judge Diaz, moreover, explained in his concurrence that "[t]he [Supreme] Court's decision in *United States v. Skrmetti* . . . has little to say about the issues *Grimm* addressed." *Id.* at *10 (Diaz, J., concurring). As particular examples, Judge Diaz explained that:

> *Grimm*'s conclusion that heightened constitutional scrutiny applies to a prohibition on transgender students' use of gender-affirming restrooms remains good law. As does *Grimm*'s holding that transgender people are at least a quasi-suspect class . . . . And *Skrmetti* **said nothing whatsoever to cause doubt as to the vitality of *Grimm*'s Title IX holding**.

*Id.* (citation omitted; emphasis added). Thus, "*Grimm* remains the law of this Circuit." *Id.* at *8.

Moreover, this case is more akin to *Bostock v. Clayton County*, wherein the Supreme Court held that firing someone for being gay or transgender "necessarily intentionally discriminates against that individual in part because of sex" in violation of Title VII. 590 U.S. 644, 646 (2020). Regulation 2603.2 necessarily involves a classification based on sex, much like the hiring restrictions at issue in *Bostock*. *See* Ex. A ("Gender-expansive and transgender students shall be provided with the option of using a locker room or restroom consistent with the student's gender identity."). And it is of no consequence that *Bostock* decided a Title VII violation as opposed to one under Title IX. Title VII and Title IX have been interpreted in a consistent manner. *See, e.g.*, *Jennings v. Univ. of North Carolina*, 482 F.3d 686, 695 (4th Cir. 2007) ("We look to case law

interpreting Title VII of the Civil Rights Act of 1964 for guidance in evaluating a claim brought under Title IX."); *Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1176 (10th Cir. 2001) ("Courts have generally assessed Title IX discrimination claims under the same legal analysis as Title VII claims.").

At bottom, it is likely that FCSB will succeed on the merits of its Declaratory Judgment claim because Regulation 2603.2 adheres to Title IX and the binding precedent established in *Grimm*. 972 F.3d at 619–20.

## II.    FCSB Will Suffer Irreparable Harm in the Absence of Injunctive Relief.

If emergency relief is not granted, hungry children will not be fed and FCPS will be without resources to meaningfully serve some of its most vulnerable student populations, including those who are disabled, are experiencing homelessness, come from low-income households, and are overcoming language barriers. *See* Compl. ¶ 61. The school year has now begun, and with its start, Defendants have pulled FCPS's federal funding, placing in jeopardy key programs that are essential to students' development. *See id.* In light of Defendants' decision to effectively freeze federal funding to FCPS, FCPS is without ***$167 million*** in federal funds earmarked to ensure that students have a successful 2025–2026 school year. *Id.* Defendants' decision has stripped FCPS of $61 million in federal funds that the school district needs to provide food and nutrition services, provide low-income students with free and reduced price meals, and ensure that FCPS's cafeterias are operating efficiently so that FCPS can feed its students high-quality meals. *Id.* Defendants have chosen to withhold an additional $41 million in federal funds designated to support students with disabilities, as required by the Individuals with Disabilities Education Act. *Id.* Defendants have also effectively frozen $65 million that had been allocated to support FCPS students' academic achievement. *Id.* Defendants' unfounded decision to strip FCPS of these resources has

implications that will likely have a lasting effect on the many FCPS students who depend on the programs that these federal grants make possible.

And while the harms FCPS faces may be considered economic, "economic damages may constitute irreparable harm where no remedy is available at the conclusion of litigation." *Mt. Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019). Here, the harm is irreparable because money damages are unavailable against the federal government due to the government's sovereign immunity. *See City of New York* 913 F.3d at 430 ("The APA waives the federal government's sovereign immunity for a limited set of suits, brought by 'a person suffering legal wrong because of agency action' to obtain relief '*other than money damages.*'" (quoting 5 U.S.C. § 702) (emphasis added)).

## III.    The Balance of Hardships and Public Interest Favor Injunctive Relief.

The balance of hardships and public interest also strongly favor injunctive relief.  In considering the balance of hardships, courts "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted).  "Where, as here, the government is a party, the balance of equities and public interest prongs of the preliminary injunction test merge." *Doe v. Hanover Cnty. Sch. Bd.*, No. 3:24-cv-293, Slip Op. at 11, 38 (E.D. Va. Aug. 16, 2024) (cleaned up) (granting plaintiff's preliminary injunction motion and enjoining the school board defendants from enforcing a board policy and any other law, policy, or custom that prohibited plaintiff—a transgender girl— from trying out for and playing on her middle school's girl's tennis team).

Here, the harm to FCSB far outweighs any potential harm to Defendants and weighs heavily in favor of injunctive relief.  The public interests at issue here include providing students served by FCPS with a fully funded educational experience, as guaranteed by the Virginia

Constitution.  *See* Va. Const. Art. VIII § 1.  As do school districts across the country, FCPS relies on federal funding to meet its obligations to its students, including by providing students with food and nutrition services and implementing programing to increase students' academic achievement. FCPS cannot satisfy that interest if it is denied the funds that Defendants have frozen.

Conversely, preliminary injunctive relief would not harm Defendants.  "The rationale behind a grant of a preliminary injunction has been explained as preserving the *status quo* so that the court can render a meaningful decision after a trial on the merits."  *Doe v. Wood Cnty. Bd. of Educ.*, 888 F. Supp. 2d 771, 778 (S.D. W. Va. 2012) (citations omitted).  If an injunction were granted, the status quo would indeed be preserved:  Defendants would be required to continue to provide funds to FCPS that make key FCPS programming possible.

As appendages of the Executive branch, Defendants inherit the President's duty to "take Care that the Laws be faithfully executed."  U.S. Const. Art. II § 3.  Where, as here, the "judicial department" has issued a binding statement about "what the law is," *Marbury*, 5 U.S. (1 Cranch) at 177, the Executive can have no protectable interest in anything other than the faithful execution of that statement.

Moreover, "[c]ompliance with Title IX," an important and well-established federal civil rights statute, is in the public interest.  *Wood*, 888 F. Supp. 2d at 778; *Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 729 (4th Cir. 2016) (Davis, J., concurring) ("Enforcing [plaintiff's] right to be free from discrimination on the basis of sex in an educational institution is clearly in the public interest"), *vacated and remanded on other grounds*, 580 U.S. 1168 (2017).  Indeed, because Defendants' purported justification for their actions is enforcement of Title IX, they can scarcely argue otherwise.  But as explained above (*supra*, p. 2–3, 12–13), Regulation 2603.2 codifies binding Fourth Circuit authority interpreting Title IX.

Some future change in the law may provide Defendants with an opportunity to reassert their demands.  But as the law stands today, Defendants' actions are flatly illegal and should be enjoined.

**CONCLUSION**

For the reasons stated above, FCSB respectfully requests that this Court grant its emergency motion for a temporary restraining order and preliminary injunction and enjoin Defendants and their officers, employees, agents, and any other person acting under Defendants' direction, supervision, or control, from designating FCPS as "high-risk" and requiring that FCPS receive reimbursement of federal funds conditioned on compliance with Defendants' demands, including prohibiting students from accessing facilities in accordance with their gender identity.

Dated:  August 29, 2025                    Respectfully submitted,

/s/ *Timothy Heaphy*

Timothy Heaphy
WILLKIE FARR & GALLAGHER LLP
1875 K Street Northwest
Washington, District of Columbia 20006-1238
Tel:  (202) 303-1000
theaphy@willkie.com
Virginia State Bar I.D. Number:  68912

Joshua Mitchell (*pro hac vice* forthcoming)
Fiona L. Carroll (*pro hac vice* forthcoming)
Lindsay Hemminger (*pro hac vice* forthcoming)
WILLKIE FARR & GALLAGHER LLP
1875 K Street Northwest
Washington, District of Columbia 20006-1238
Tel:  (202) 303-1000
jmitchell@willkie.com
fcarroll@willkie.com
lhemminger@willkie.com

Breanna Smith-Bonsu (*pro hac vice* forthcoming)
Chloe Smeltzer (*pro hac vice* forthcoming)

WILLKIE FARR & GALLAGHER LLP
300 North LaSalle Drive
Chicago, Illinois 60654-3406
Tel:  (312) 728-9000
bsmith-bonsu@willkie.com
csmeltzer@willkie.com

*Attorneys for Fairfax County School Board*

**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| FAIRFAX COUNTY SCHOOL BOARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| LINDA MCMAHON, in Her Official Capacity as | ) | |
| Secretary of Education, and | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| EDUCATION, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 29 day of August, 2025, I electronically filed a true and correct copy of **PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND/OR TEMPORARY RESTRAINING ORDER** and accompanying documents with the Clerk of Court using the CM/ECF system. A copy of the foregoing will be sent to the following parties:

U.S. Department of Education

Secretary Of Education Linda McMahon

/s/ *Timothy Heaphy*

Timothy Heaphy
WILLKIE FARR & GALLAGHER LLP
1875 K Street Northwest
Washington, District of Columbia 20006-1238
Tel: (202) 303-1068
theaphy@willkie.com
Virginia State Bar I.D. Number: 68912

Joshua Mitchell (*pro hac vice* forthcoming)
Fiona L. Carroll (*pro hac vice* forthcoming)
Lindsay Hemminger (*pro hac vice* forthcoming)
WILLKIE FARR & GALLAGHER LLP
1875 K Street Northwest
Washington, District of Columbia 20006-1238
Tel:  (202) 303-1000
jmitchell@willkie.com
fcarroll@willkie.com
lhemminger@willkie.com

Breanna Smith-Bonsu (*pro hac vice* forthcoming)
Chloe Smeltzer (*pro hac vice* forthcoming)
WILLKIE FARR & GALLAGHER LLP
300 North LaSalle Drive
Chicago, Illinois 60654-3406
Tel:  (312) 728-9000
bsmith-bonsu@willkie.com
csmeltzer@willkie.com
*Attorney for Fairfax County School Board*