**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| FAIRFAX COUNTY SCHOOL BOARD, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 1:25-cv-01432 (RDA/LRV) |
| v. | ) ) | |
| LINDA McMAHON, in her official capacity as Secretary of Education of the United States, and the UNITED STATES DEPARTMENT OF EDUCATION, | ) ) ) ) ) ) | |
| *Defendants*. | ) | |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR AN EMERGENCY
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................3

INTRODUCTION ..............................................................................................................................4

I.      The Court Has Jurisdiction Over FCSB's Claims for Injunctive Relief..............................4

        A.      FCSB Seeks Injunctive Relief And Not "Money Damages" As Interpreted By The Supreme Court. ........................................................................................................ 5

        B.      Under Supreme Court Precedent, FCSB's Claims Are Not Within the Court of Federal Claims' Exclusive Jurisdiction. ............................................................... 7

        C.      The *Harvard* Case Further Undercuts Defendants' Argument. ............................ 10

II.     Defendants Incorrectly Suggest that FCSB Disengaged From Negotiation. .....................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*NIH v. American Public Health Association,*
　No. 25A103, 2025 WL 2415669 (Aug. 21, 2025) ............................................................. 5, 8, 9

*Bowen v. Massachusetts,*
　487 U.S. 879 (1988) .......................................................................................................... 4, 6, 7

*Chase Brexton Health Servs., Inc. v. Maryland,*
　411 F.3d 457, 462 (4th Cir. 2005) ............................................................................................ 7

*Colwell v. Dep't of Health & Hum. Servs.,*
　558 F.3d 1112, 1128 (9th Cir. 2009) ..................................................................................... 11

*Department of Education v. California,*
　145 S. Ct. 966 (2025) ....................................................................................................... 5, 7, 8

*Grimm v. Gloucester County School Board,*
　972 F.3d 586 (4th Cir. 2020) ............................................................................................. 7, 12

*Marks v. United States,*
　430 U.S. 188, 193 (1977) ......................................................................................................... 8

*Me. Cmty. Health Options v. United States,*
　590 U.S. 296 (2020) ................................................................................................................. 9

*Pres. & Fellows of Harvard Coll. v. U.S. Dep't of Justice,*
　No. 25-cv-11048-ADB, Doc. 238 (D. Mass. Sept. 3, 2025) ............................................ 10, 11

*Sustainability Inst. v. Trump,*
　No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025) ........................................................ 8

**Statutes**

5 U.S.C. § 702 ................................................................................................................... 4, 5, 6

5 U.S.C. § 706 ......................................................................................................................... 4

20 U.S.C. § 1683 ............................................................................................................. 6, 8, 10

28 U.S.C. § 1491 ..................................................................................................................... 9

42 U.S.C. § 2000d-2 .......................................................................................................... 10, 11

**INTRODUCTION**

Plaintiff the Fairfax County School Board ("FCSB") files this memorandum in reply to Defendants' misguided argument that the Court lacks jurisdiction to hear the FCSB's claims for an injunction pursuant to the Administrative Procedure Act ("APA"). More specifically, FCSB strenuously disagrees that the Court of Federal Claims is the proper venue for this dispute. *Bowen v. Massachusetts* and recent Supreme Court precedent establish a line between substantive clams that seek Court protection of constitutional and statutory rights and contract claims for money damages. While the latter claims must be brought in the first instance in the Court of Federal Claims, the former claims are within the waiver of sovereign immunity provided in Section 706 of the APA and thus lie within this Court's jurisdiction. Plaintiff's motion for preliminary injunction before this Court is a substantive claim seeking this Court's adjudication of constitutional and statutory rights—not a contractual claim for money damages. As a result, this Court has jurisdiction to adjudicate this dispute and evaluate our claims that Defendants' designation of Fairfax County Public Schools ("FCPS") as "high-risk" and conditioning FCPS's access to federal funds on the demand that FCPS change its policy entitled "Gender-expansive and Transgender Students" ("Regulation 2603.2) is arbitrary, capricious, an abuse of discretion, and contrary to law.

**I.    The Court Has Jurisdiction Over FCSB's Claims for Injunctive Relief.**

The APA waives the federal government's sovereign immunity for a limited set of suits brought by an entity "suffering legal wrong because of agency action" to obtain relief "other than money damages." 5 U.S.C. § 702. In Defendants' Memorandum in Opposition to Plaintiff's Motion for a TRO and PI (ECF No. 19) ("Opp."), Defendants assert that this Court lacks jurisdiction over FCSB's APA action because it "is one for money damages," which under the Tucker Act, is a claim reserved to the Court of Federal Claims. Opp. at 12.

But this statement (1) flies in the face of the plain language of FCSB's Complaint (ECF No. 19 at p. 26); (2) defies Congress's intent regarding money damages; and (3) is plainly incorrect in light of the Supreme Court's interpretation of what constitutes money damages. Meanwhile, Defendants' reliance on *Department of Education v. California* and *NIH v. American Public Health Association* is misplaced, as those cases involved claims where grantees asked district courts to enforce federal government *contracts*—a matter that lies expressly within the Court of Federal Claims' jurisdiction. Here, FCSB asks the Court to interpret the contours of the Equal Protection Clause and Title IX in the Fourth Circuit.

### A.    FCSB Seeks Injunctive Relief And Not "Money Damages" As Interpreted By The Supreme Court.

FCSB is seeking judicial intervention to enjoin the Department from designating FCPS as a "high-risk" entity and conditioning its receipt of federal funds on the demand that FCSB adopt the Department's unlawful interpretation of Title IX and the Equal Protection Clause. FCSB is plainly not seeking "money damages" under 5 U.S.C. § 702.

*First*, FCSB's pleadings explicitly say as much. Compl., ECF No. 1 at 26; FCSB's Mem. in Supp. of its Emergency Mot. for a TRO and Prelim. Inj. (ECF No. 2) ("Memo"). In its Complaint, FCSB clearly sets forth its requests for injunctive relief. Compl. at 26. Then reiterating this point in its Memo, FCSB explains that "while the harms FCPS faces may be considered economic, 'economic damages may constitute irreparable harm where no remedy is available at the conclusion of litigation,'" and that FCSB's harm "is irreparable because money damages are unavailable against the federal government due to the federal government's sovereign immunity." Memo at 22. In other words, the harm FCSB faces due to the Department's action is irreparable **because** of the very fact that FCSB will not have a remedy against the Department for money damages.

*Second*, the Supreme Court has decided that even where the outcome of a claim involves "monetary aspects of [] relief," it is not necessarily one that seeks "money damages" within the meaning of 5 U.S.C. § 702. *See Bowen v. Massachusetts*, 487 U.S. 879, 880 (1988). Where an entity's suit is of "the nature of an equitable action for specific relief seeking reimbursement to which the [entity] was allegedly already entitled, rather than money in compensation for losses suffered as a result of the" agency action, the relief sought is not "money damages." *Id*. That is plainly the relief that FCSB seeks here. *See* Compl. at p. 26–27 ("For relief, FCSB requests that the Court . . . Preliminarily and permanently enjoin Defendants from conditioning, terminating, freezing, or otherwise impeding access to federal funds allocated to FCPS based on FCPS's alleged violation of Title IX[.]").

*Third*, Congress's own intent is that a suit for "terminating or refusing to grant or to continue financial assistance upon a finding of failure to comply with any requirement" of Title IX is not a suit for money damages. 20 U.S.C. §1683. Congress's intent is plain from its intentional inclusion of a provision within Title IX that explicitly provides APA review for claims arising under the statute. More specifically, Congress—aware that the APA *forbids* suits for money damages, 5 U.S.C. § 702—nevertheless chose expressly to channel judicial review of Title IX financial-assistance disputes through the APA. 20 U.S.C. § 1683 ("In the case of action, not otherwise subject to judicial review, terminating or refusing to grant or to continue financial assistance upon a finding of failure to comply with any requirement imposed pursuant to section 1682 of this title, any person aggrieved (including any State or political subdivision thereof and any agency of either) may obtain judicial review of such action ***in accordance with chapter 7 of title 5***, and such action shall not be deemed committed to unreviewable agency discretion within

the meaning of section 701 of that title.") (emphasis added). Defendants' reading would render this Title IX judicial review provision a nullity.

Defendants insist on rejecting Fourth Circuit precedent that binds FCPS and this Court in their interpretation of Title IX. That makes this case a substantive claim appropriately brought under the APA, not one seeking "money damages" which must be heard by the Court of Federal Claims. This Court should decline Defendants' improper invitation to ignore a case that lies squarely within its jurisdiction. *See, e.g.*, *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 462 (4th Cir. 2005) (noting that "federal courts are bound by a virtually unflagging obligation to exercise the jurisdiction given them") (cleaned up).

### B. Under Supreme Court Precedent, FCSB's Claims Are Not Within the Court of Federal Claims' Exclusive Jurisdiction.

Recent Supreme Court jurisprudence also confirms that FCSB's claims are not within the exclusive jurisdiction of the Court of Federal Claims and are instead properly before this Court.

In *Department of Education v. California*, a district court enjoined the federal government from terminating various education-related grants and required it "to pay out past-due grant obligations and to continue paying obligations as they accrue." 145 S. Ct. 966, 968 (2025). In a *per curiam* opinion, the Supreme Court clarified that an order enforcing the federal government's *contractual* obligation to pay money lies within the Court of Federal Claims' exclusive Tucker Act jurisdiction. *Id.* But the Court also explicitly recognized that its precedent in *Bowen v. Massachusetts* provides that "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds." *Id.* (quoting *Bowen*, 487 U.S. at 910). In contrast to the plaintiffs in *Department of Education v. California*, FCSB is not asking the Court to require the government to pay monies allocated by contract. Instead, FCSB asks the Court to set aside the Department's action designating FCPS as high-risk

and conditioning its receipt of federal funds on FCPS's adopting an unlawful reading of *Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020).  *See* Compl. at 26.  Should this Court grant injunctive relief and set aside the agency's action, federal funds may indeed be disbursed as a result—but that fact does not transform FCSB's claim for injunctive relief into a claim for money damages.[1]

And again in *NIH*, the Supreme Court reviewed a district court's decision to vacate federal agency guidance and the termination of various research grants.  No. 25A103, 2025 WL 2415669, at *1 (Aug. 21, 2025).  Justice Barrett's concurrence in the *NIH* case controls, because it offers the narrowest rationale for the Court's judgment partially staying the vacatur of those grant terminations.  *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.") (quotation marks omitted).  In it, she clarified that the federal government "[was] not entitled to a stay of the judgments insofar as they vacate the [agency's] guidance documents."  *Id.* at *2 (Barrett, J., concurring).  Justice Barrett specifically explained that "[p]laintiffs frequently seek vacatur of internal agency guidance on arbitrary-and-

---

[1] The Fourth Circuit recently applied *California* in an appeal by the federal government challenging a district court's decision that it had jurisdiction to issue an injunction ordering the federal government to "restore [grantees'] access to grant funding immediately" and prohibit the federal government from "freezing, terminating, or otherwise interfering with the funding of [those] Grants . . . without written authorization from the Court."  *Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *1 (4th Cir. June 5, 2025).  In that case, the Fourth Circuit held that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered."  *Id.* (quoting *California*, 145 S. Ct. at 968).  Defendants cite *Sustainability Institute* in support of their overbroad proposition that every APA claim for injunctive relief that may result in funds leaving the federal fisc is a veiled claim for money damages.  *Id.* at *2.  But they simply have no answer for the plain text of Title IX, which authorizes this suit.  20 U.S.C. § 1683.  And further, FCSB is not petitioning this Court for an order to enforce a contract.

capricious grounds in district court," and the fact that "agency guidance discusses . . . grants does not transform a challenge to that guidance into a claim 'founded upon' contract that only the [Court of Federal Claims] can hear." *Id.* at *2 (Barrett, J., concurring) (referencing 28 U.S.C. § 1491(a)(1)).  Further, "the District Court was likely correct to conclude it had jurisdiction to entertain an APA challenge to the guidance, and it would be confusing to [the Court's] disposition of [the] application to suggest that the [Court of Federal Claims] [was] the right forum for [the APA] claim." *Id.* (Barrett, J., concurring).

The finding that Justice Barrett cautioned against is the very finding the Defendants are asking this Court to take.  Like the DEI guidance at stake in *NIH*, the "high-risk" designation we are seeking to enjoin is a substantive determination of the reach of a federal statute (Title IX) and the Equal Protection Clause, well beyond a contract claim for money damages.  Justice Barrett's concurrence in *NIH* provides that claims regarding the interpretation of law are within the District Court's jurisdiction pursuant to the APA.  It is perplexing that Defendants would suggest that the Court of Federal Claims is the proper forum given the nature of the relief FCSB seeks.  As Justice Barrett made clear, "**APA challenges to [agency] guidance belong in district court**."  *Id.* at *3 ((Barrett, J., concurring) (emphasis added).

Finally, as Justice Barrett's concurrence makes clear, the Court of Federal Claims—which is not a court of equity—cannot grant the relief that FCSB seeks here, further confirming that this Court is the proper forum.  *Id.* at *1.  Where a plaintiff seeks prospective equitable relief demanding, for example, that Defendants comply with Title IX's procedural requirements, the Court of Federal Claims cannot fully "adjudicate the claims over which it [would have] jurisdiction," *id.* at *2 n.1, because unlike Article III courts, it lacks general equitable powers. *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 327 (2020).  If accepted by this Court,

Defendants' arguments regarding the appropriate forum for FCSB's substantive claims would result in no court having jurisdiction to resolve the weighty Title IX and constitutional issues at stake in the instant case.

### C. The *Harvard* Case Further Undercuts Defendants' Argument.

Just hours after this Court heard oral argument in the instant case, the District of Massachusetts entered an order which largely grants Harvard University's motion for summary judgment and preserves federal research pursuant to the APA. *Pres. & Fellows of Harvard Coll. v. U.S. Dep't of Justice*, No. 25-cv-11048-ADB, Doc. 238 (D. Mass. Sept. 3, 2025)*, attached hereto as* Exhibit A. Of particular relevance here, the District of Massachusetts granted Harvard's motion for summary judgment on its challenge to the Department of Justice's interpretation of Title VI—a law that contains a judicial review provision identical to Title IX's. *Compare* 42 U.S.C. § 2000d-2 ("In the case of action, not otherwise subject to judicial review, terminating or refusing to grant or to continue financial assistance upon a finding of failure to comply with any requirement imposed pursuant to section 2000d–1 of this title, any person aggrieved (including any State or political subdivision thereof and any agency of either) **may obtain judicial review of such action in accordance with chapter 7 of title 5**, and such action shall not be deemed committed to unreviewable agency discretion within the meaning of that chapter."), *with* 20 U.S.C. § 1683 (same, but for the substitution of "section 1682" in the place of "section 2000d-1")(emphasis added).

As the District of Massachusetts explained—and as this Court noted from the bench yesterday—the Supreme Court is significantly divided and has provided limited guidance, largely in the form of minimally reasoned, emergency-docket decisions, on the question of district-court jurisdiction of actions that may result in disbursement of federal funds. *See* Ex. A at 24 (noting that "the precise contours" of "the jurisdictional boundary between the Tucker Act and the APA"

"remain elusive . . . even following recent rulings by the Supreme Court on its emergency docket.") (cleaned up). Nevertheless, the Massachusetts court divined a consistent through-line in those decisions. *See id.* at 23–31. Its conclusion was that "simply put, contract claims against the federal government must be brought in the Court of Federal Claims, but claims that do not sound in contract or seek contract-based relief stay in federal district court." *Id*. at 25.

There—as here—the question was not one that sounded in contract. In particular, the Massachusetts court noted that "Title VI claims do not ordinarily fall within the ambit of the Tucker Act, which is very specifically contract-focused." *Id*. at 28. "Nor," it continued, "does the Tucker Act's waiver of sovereign immunity strike the Court as relevant to Title VI, which itself expressly authorizes 'judicial review' of agency action 'terminating or refusing to grant or to continue financial assistance,' including through the APA, in an article III court." *Id*. at 28–29 (citing 42 U.S.C. § 2000d-2); *see also Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1128 (9th Cir. 2009) ("Judicial review of any [Title VI] funding termination is available in an Article III court."). So too, here, where the underlying question is about the interpretation of Title IX—in which Congress adopted wholesale the judicial review provisions of Title VI—and where one result (but by no means the only result) of resolving that question could be the release of federal funds. The *Harvard* decision provides new, persuasive authority for the result we urge this Court to adopt in the instant case—recognizing that the APA gives this Court jurisdiction to adjudicate our substantive Title IX and Equal Protection claims.

II.     **Defendants Incorrectly Suggest that FCSB Disengaged From Negotiation.**

In their Notice Regarding Factual Background ("Notice") filed after the hearing on the instant motion, Defendants incorrectly claim that FCSB disengaged from the negotiation process prematurely and that "Defendants remain willing to consider the reconsideration request." Notice, ECF No. 25 at 2. This assertion is unfounded, based on all of FCSB's correspondence

with the Department thus far.  Perhaps most glaringly, following FCSB's request for a 90-day period to engage in a resolution agreement negotiation pursuant to the Department's Office for Civil Rights' Case Processing Manual, a Department official stated that while the Department was "all ears" on any proposed negotiation, the

> proposed resolution agreement was intentional and specific about its key resolution terms.  And [the Department does] not intend to allow recipients who are not serious about coming into compliance with Title IX—***including acknowledging that Title IX is a statute only about sex discrimination and that the term 'sex' in Title IX refers only to biological sex and not gender identity***—to drag out discussions unnecessarily.

*See* Ex. B at 1 (emphasis added).  This states the position that Defendants' have taken from the outset of this investigation—a demand that FCPS change Regulation 2603.2 as a non-negotiable condition of resolution.  This Hobson's-choice demand is not the position of a counterparty interested in good-faith negotiation.  The only option it offers is unconditional surrender.

As FCSB has explained, Fourth Circuit precedent (*Grimm v. Gloucester County School Board*) that binds it and this Court prevent such a surrender.  The crux of this case is FCSB's position that the proposed resolution agreement is in absolute conflict with the law binding this jurisdiction.  This Court need not countenance Defendants' bad-faith mischaracterization of their position as one of openness to negotiation.  Defendants have chosen a hardline approach in direct violation of Fourth Circuit precedent; they must now live with the consequences of their choice.

Dated:  September 4, 2025                         Respectfully submitted,


/s/ *Timothy Heaphy*

Timothy Heaphy
WILLKIE FARR & GALLAGHER LLP
1875 K Street Northwest
Washington, District of Columbia 20006-1238
Tel:  (202) 303-1000
theaphy@willkie.com
Virginia State Bar I.D. Number:  68912

Joshua Mitchell (admitted *pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
1875 K Street Northwest
Washington, District of Columbia 20006-1238
Tel:  (202) 303-1000
jmitchell@willkie.com
District of Columbia Bar I.D. Number:  1012854

Breanna Smith-Bonsu (admitted *pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
300 North LaSalle Drive
Chicago, Illinois 60654-3406
Tel:  (312) 728-9000
bsmith-bonsu@willkie.com
Illinois State Bar I.D. Number:  6330468

*Attorneys for Fairfax County School Board*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| FAIRFAX COUNTY SCHOOL BOARD, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Civil Action No. 1:25-cv-01434 |
| v. ) | |
| ) | |
| LINDA McMAHON, in her official capacity ) | |
| as Secretary of Education of the United ) | |
| States, and the UNITED STATES ) | |
| DEPARTMENT OF EDUCATION, ) | |
| ) | |
| *Defendants*. ) | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of September, 2025, I electronically filed a true and correct copy of the foregoing memorandum and accompanying documents with the Clerk of Court using the CM/ECF system. A copy of the foregoing will be sent to the following parties:

Matthew J. Mezger
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700
Matthew.mezger@usdoj.gov

Abhishek Kambli
United States Department of Justice
950 Pennsylvania Avenue Northwest
Washington, D.C. 20530-0001
(202) 445-5496
Abhishek.kambli@usdoj.gov

Garry D. Hartlieb
United States Attorney's Office – Norfolk
101 West Main Street
Suite 8000
Norfolk, Virginia 23510
(757) 441-6331 Garry.hartlieb@usdoj.gov

*Counsel for the U.S. Department of*
*Education and Secretary Of Education*
*Linda McMahon*

/s/ *Timothy Heaphy*

Timothy Heaphy
WILLKIE FARR & GALLAGHER LLP
1875 K Street Northwest
Washington, District of Columbia 20006-1238
Tel:  (202) 303-1068
theaphy@willkie.com
Virginia State Bar I.D. Number:  68912

Joshua Mitchell (admitted *pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
1875 K Street Northwest
Washington, District of Columbia 20006-1238
Tel:  (202) 303-1000
jmitchell@willkie.com
District of Columbia Bar I.D. Number:  1012854

Breanna Smith-Bonsu (admitted *pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
300 North LaSalle Drive
Chicago, Illinois 60654-3406
Tel:  (312)728-9000
bsmith-bonsu@willkie.com
Illinois State Bar I.D. Number:  6330468

*Attorneys for Fairfax County School Board*